Exhibit A

# RESOLUTION AGREEMENT

## UNITED STATES DEPARTMENT OF THE INTERIOR

| | |
|---|---|
| *Cheryl Riley* | ) |
| v. | ) |
| | ) |
| | ) |
| U.S. Department of the Interior | ) |
| Bureau of Reclamation | ) |

## RESOLUTION AGREEMENT

In accordance with the terms set forth herein below, the parties hereby agree to resolve the above-captioned complaint of discrimination.

By executing this Resolution Agreement the parties hereby agree to resolve all of the issues raised in Cheryl Riley's (hereinafter, the Complainant) informal complaint of discrimination, including all claims of monetary reimbursement, and any other claims for relief, whether referenced herein or not, whether known or unknown, and all other personnel claims which have been filed or could have been filed by her against the U.S. Department of the Interior or any of its Bureaus and Offices (hereinafter, the Agency) through the date of execution of this Resolution Agreement.

The Complainant alleged she was discriminated against on the bases of sex (female) and hostile work environment.

The issues alleged in the complaint and resolved by the Resolution Agreement are as follows:

1. Complainant was subjected to demeaning, unprofessional behavior (yelling, threatening, intimidating) on the part of Rex Wahl, Team Leader and Thayer Broili, Supervisor. Men in the group are treated differently.
2. Complainant was publicly criticized or ridiculed by both Team Leader and Supervisor.
3. Assignments involving decision-making and/or status were taken away from Complainant.
4. Complainant's input was not valued or wanted. Input was solicited from the men in the group.
5. Complainant was instructed by Supervisor to limit email communications within the group and send no email to the Director.
6. On several occasions, Team Leader denied training or involvement with outside groups to Complainant.

RIL.DOI.00615

The parties mutually agree to the following terms and further agree that these terms shall fully and forever resolve Complainant's allegations of discrimination against the Agency, and that except as specified herein, no other promises, conditions or obligations are made or imposed on the parties:

1. By executing this Resolution Agreement, Complainant withdraws and dismisses, with prejudice, her informal complaint of discrimination, and any other allegation, complaint, grievance, or other action she has filed and could have filed and agrees not to institute, file or otherwise initiate or cause to be instituted, filed or initiated on her behalf, any complaint or other action, including civil court litigation, against the Agency, its bureaus, offices, agents or employees which has or could have been filed by her through the date of execution of this Resolution Agreement.

2. The Complainant understands and agrees that she will receive no relief or other consideration beyond that recited in this Resolution Agreement, and that her acceptance of this shall be final and conclusive.

3. The Complainant shall bear her own costs including attorney's fees relating to this matter.

4. Complainant will be responsible for all taxes (as applicable) that may be due as result of this agreement. This would include any and all appropriate normal deductions that are typical for pay.

5. No compensatory damages will be paid to the complainant.

6. The failure or unenforceability of one portion of this agreement does not affect the enforceability of the remainder of the agreement.

ACCORDINGLY, THE AGENCY AGREES TO:

1. Detail the Complainant, from her current position, Natural Resource Specialist, GS-0401-09/01, to the HAZMAT Team, under Ron Curiel, Team Leader, for a 60-day period, beginning October 11, 2004, to allow the parties a cooling-off period.

2. Supervisor Thayer Broili and Team Leader Ron Curiel will discuss with the Complainant her role and responsibilities on the HAZMAT Team, while on detail, within the week of October 11, 2004.

3. Supervisor Thayer Broili will develop an individual development plan for the Complainant for her current position of Natural Resource Specialist, GS-0401-09/01 within 60 days of the execution of this agreement.

RIL.DOI:00616

4. To improve communication, the Complainant and Supervisor Thayer Broili will meet weekly for a period of at least six months, unless either party is on leave, travel, or involved in work exigency/emergencies.

5. Provide team-building training for the Environmental and HAZMAT Group of the Resource Management Office, beginning November 2004.

That this Resolution Agreement shall not constitute or be construed as an admission of liability or wrongdoing by the Agency, but is for the purpose of resolving disputed claims. Upon compliance and or payment of the items and or amounts set forth in this Resolution Agreement, Complainant waives and releases the agency in full from any claims or causes of action for back pay, damages, interest or attorney's fees, which she raised or could have raised through the date of this Resolution Agreement.

That the parties agree to this Resolution Agreement warrant that they have not assigned or transferred any of the claims released herein to other persons, parties or entities.

That the parties agree that should the Agency fail to honor its obligations as set forth in this Resolution Agreement, 29 CFR 1614.504 shall govern. If the Complainant believes that the agency has failed to comply with the terms of a settlement agreement or final decision, the Complainant shall notify the Director, Office for Equal Opportunity, Office of the Secretary in writing, of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. The Complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased. If this complaint is reinstated, the Complainant understands that the parties return to a status quo ante.

That this Resolution Agreement contains the complete understanding between the parties. The parties have no other oral or written agreements or understandings. That this Resolution Agreement is entered into voluntarily and with full understanding of its terms.

In consideration of the foregoing, the Parties knowingly and voluntarily settle the complaint by signing and dating this Resolution Agreement, below:


Cheryl Riley, Complainant                     10/07/04
                                              Date


Cynthia Hoeft, Resource Management            10/7/04
Office Director, Yuma Area Office              Date

RIL.DOI.00617

Exhibit B

# Cheryl J. Riley

work 928-343-8286          cell 509-307-3534

**1562 W. 15th Street ◊ Yuma, Arizona 85367**

December 7, 2004

Director, OEO, Secretary of the Interior
1849 C Street, NW, MS-MIB-5221
Washington, D.C. 20240

RE:     Breach of Resolution Confidentiality Agreement
        and Retaliatory Action

Dear Director:

In August 2004, I filed an EEO complaint with the Bureau of Reclamation Lower Colorado (LC) Regional Office against Environmental Group Team Leader Rex Wahl, Supervisor Thayer Broili, and Resource Management Office Director Cindy Hoeft. On October 5, 2004 I entered into mediation with the parties against whom I had filed an EEO complaint. This mediation was done over the course of three days with 3 individuals. At the commencement of each mediation session a confidentiality agreement was signed by each party involved in the mediation. On October 7, 2004, I signed a Resolution Agreement with the Resource Office Director (copy attached).

I am reporting to you that one of the persons, Rex Wahl, whom I filed the Complaint against, breached the Confidentiality Agreement by disclosing to at least one other employee coworker specific information discussed only in the one mediation session I had with him. Mr. Wahl further denigrated me personally and my professional knowledge to this coworker in efforts to create hostility toward me and cause a rift in our working relationship. I learned of this breech on November 7, 2004. I reported this situation to the Resource Office Director Cindy Hoeft and LC Region EEO Specialist Tess Yiamarelos.

In addition to breeching the confidentiality of the mediation agreement, guaranteeing privacy and a stop to this individual persecuting me in the workplace, I feel his actions constitute a retaliatory action by him against me. I also feel that, although I have tried to work with the informal process, I am not safe from his persecuting me, his causing denigrating gossip of me, and his constantly creating a hostile workplace for me. I have suffered from his mistreating me in the workplace for over 6 months, which has resulted in my experiencing anxiety attacks, sleeplessness, stomach problems, and dreading coming to work every day. I am seeing an EAP counselor for the problems he has caused me but I am still suffering from his actions.

Of the items in the resolution, I was only able to have the past 2 weeks to work under the other Team Leader, Ron Curiel.

I would appreciate your looking into this matter for me. I would like to discuss with you avenues available to me to get away from this person.

Thank you for your help.

Sincerely,


Cheryl J. Riley
Email: criley@lc.usbr.gov

COPY

DEPOSITION
EXHIBIT
3

Riley 0277

Exhibit C

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

———————

| | | |
|---|---|---|
| Cheryl J. Riley, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. CIV-06-2160-PHX-SRB |
| vs. | ) | |
| | ) | |
| Dirk Kempthorne, Secretary, | ) | |
| United States Department of | ) | |
| Interior, | ) | |
| | ) | |
| Defendants. | ) | |

Phoenix, Arizona
November 16, 2007
10:18 A.M.

DEPOSITION OF CHERYL J. RILEY

Transcript Prepared for:
U.S. ATTORNEY'S OFFICE
Jill L. Hirneisen, Esq.
Of Counsel

COPPERSTATE REPORTING SERVICE
Court Reporters
12601 North 59th Place, Suite 100
Scottsdale, Arizona 85254-4312
(602) 795-5515

Reported by:

LILIA MONARREZ, RPR
CR # 50699

PEGGY SMITH, RPR
CR # 50726



| | |
|---|---|
| 00:45:42 1 | think of? |
| 00:45:42 2 | A. Yes. I saw Dr. -- last name is McCallum. |
| 00:45:53 3 | Q. Okay. |
| 4 | A. I don't remember his first name. M-C, |
| 5 | capital C-A-L-L-U-M. |
| 00:45:58 6 | Q. Does Dr. McCallum practice in Yuma? |
| 00:46:01 7 | A. No. |
| 00:46:02 8 | Q. Okay. |
| 00:46:02 9 | A. La Jolla. |
| 00:46:04 10 | Q. La Jolla. |
| 00:46:05 11 | What kind of doctor is Dr. McCallum? |
| 00:46:07 12 | A. Endocrinologist. |
| 00:46:10 13 | Q. Okay. And when did you see him last? |
| 00:46:12 14 | A. I'm not sure if it was late 2006 or early |
| 00:46:20 15 | 2007. |
| 00:46:20 16 | Q. Okay. Are there any other providers |
| 00:46:25 17 | you've treated with recently? |
| 00:46:27 18 | A. Are we talking medical or also |
| 00:46:30 19 | psychological? |
| 00:46:31 20 | Q. Either. |
| 00:46:31 21 | A. Okay. Dr. Rod Nelson. |
| 00:46:35 22 | Q. Okay. |
| 00:46:35 23 | A. N-E-L-S-O-N. |
| 00:46:41 24 | Q. Is Dr. Nelson a psychologist? |
| 00:46:43 25 | A. Yes. |

| | |
|---|---|
| 00:46:44 1 | Q. When is the last time you saw Dr. Nelson? |
| 00:46:50 2 | A. Tuesday. |
| 00:46:54 3 | Q. Okay. Are there any other providers that |
| 00:47:00 4 | we haven't talked about yet? |
| 00:47:02 5 | A. Give me a moment, okay, because I've seen |
| 00:47:04 6 | quite a few. |
| 00:47:05 7 | Q. Okay. |
| 00:47:38 8 | A. I saw Dr. Serocki for an IME, but he |
| 00:47:42 9 | didn't have approval by OWCP and so it went nowhere. |
| 00:47:48 10 | Q. Okay. |
| 00:47:49 11 | So I don't know if that matters. |
| 00:47:50 12 | Did you actually see him? |
| 00:47:52 13 | A. I did. |
| 00:47:53 14 | Q. Okay. Approximately when do you believe |
| 00:47:55 15 | you saw Dr. Serocki? |
| 00:47:57 16 | A. A couple of months ago. |
| 00:48:02 17 | Q. Okay. Any other providers that you can |
| 00:48:07 18 | think of? |
| 00:48:07 19 | A. Physical therapy? You want that? |
| 00:48:21 20 | Q. Sure. |
| 00:48:21 21 | A. I have seen -- been to Yuma Physical |
| 00:48:34 22 | Therapy numerous times where therapy is prescribed by |
| 00:48:38 23 | Dr. Runyan. |
| 00:48:39 24 | Q. Okay. |
| 00:48:39 25 | A. There in Yuma. |

| | |
|---|---|
| 00:48:41 1 | Q. Can you recall when your most recent visit |
| 00:48:45 2 | was at Yuma P.T.? |
| 00:48:45 3 | A. I'll try. It was in spring of 2007. |
| 00:48:50 4 | Dr. Hieb had actually referred me there for neck |
| 00:48:54 5 | treatments. |
| 00:48:55 6 | Q. Okay. Are there any other providers you |
| 00:49:00 7 | can think of whom you've treated with in the last |
| 00:49:02 8 | couple of years? |
| 00:49:03 9 | A. The last couple of years? |
| 00:49:03 10 | Q. Or recently. |
| 00:49:10 11 | A. Oh, recently. |
| 00:49:12 12 | Q. Let's keep it the same, the same time |
| 00:49:14 13 | frame, whatever that means here. |
| 00:49:15 14 | A. Well, I saw a Dr. Rajeesh Kumar. That was |
| 00:49:23 15 | in fall in 2004. |
| 00:49:28 16 | Q. Okay. |
| 00:49:29 17 | A. But he's no longer in Yuma. |
| 00:49:30 18 | Q. Was that before or after you were injured |
| 00:49:32 19 | on the job? |
| 00:49:33 20 | A. That was before and after. |
| 00:49:36 21 | Q. Okay. |
| 00:49:40 22 | A. Oh, and I saw Dr. Wong. |
| 00:49:42 23 | Q. What kind of doctor is Dr. Kumar? |
| 00:49:45 24 | A. Internal medicine. |
| 00:49:46 25 | Q. Okay. |

| | |
|---|---|
| 00:49:48 1 | A. He had initially been my primary general |
| 00:49:52 2 | physician, but I didn't really like him very much. |
| 00:49:58 3 | Q. Okay. |
| 00:49:58 4 | A. And went to Dr. Moor. |
| 00:50:00 5 | Q. When did you see Dr. Wong? |
| 00:50:03 6 | A. I think it was during the summer of 2007. |
| 00:50:12 7 | I think that's his name. I'm not positive. I saw him |
| 00:50:17 8 | one time. |
| 00:50:17 9 | Q. What kind of doctor is Dr. Wong? |
| 00:50:19 10 | A. I believe he's internal medicine also. |
| 00:50:21 11 | Q. Are there any other providers you've seen |
| 00:50:25 12 | recently that you can think of? |
| 00:50:26 13 | A. I don't believe so. |
| 00:50:28 14 | Q. Okay. If you think of any other during |
| 00:50:30 15 | the deposition, just let me know. |
| 00:50:32 16 | A. I'll try. |
| 00:50:32 17 | Q. Have you been employed since your removal |
| 00:50:37 18 | from the Bureau of Reclamation in 2005? |
| 00:50:39 19 | A. No. |
| 00:50:40 20 | Q. Are you currently receiving any disability |
| 00:50:47 21 | payments? |
| 00:50:47 22 | A. I am. I -- |
| 00:50:54 23 | Q. Go ahead. |
| 00:50:55 24 | A. I'm not sure if -- my workers' comp is |
| 00:51:01 25 | considered disability. So I'll name workers' comp, |

| | | |
|---|---|---|
| 00:51:04 | 1 | which is OWCP, I receive monthly benefits from. |
| 00:51:08 | 2 | Q. What is the amount of that benefit, |
| 00:51:11 | 3 | roughly? |
| 00:51:15 | 4 | A. 2,182 a moth. |
| 00:51:16 | 5 | Q. $2,182 a month? |
| 00:51:18 | 6 | A. Correct. |
| 00:51:19 | 7 | Q. Are you receiving any other disability |
| 00:51:22 | 8 | payments? |
| 00:51:23 | 9 | A. Yes. I'm receiving $166 a month from |
| 00:51:28 | 10 | Social Security Administration for disability. |
| 00:51:34 | 11 | Q. Are you receiving any other payments? |
| 00:51:37 | 12 | A. I don't know if it's considered a payment, |
| 00:51:43 | 13 | but I do get Medicare in health. So it's not monetary, |
| 00:51:45 | 14 | but it's part of my insurance. |
| 00:51:47 | 15 | Q. You're insured by Medicare? |
| 00:51:50 | 16 | A. And by my federal health plan as well. |
| 00:51:54 | 17 | Q. Okay. |
| 00:51:54 | 18 | A. But Medicare is primary now. |
| 00:51:58 | 19 | Q. Do you have any other sources of income |
| 00:52:04 | 20 | that we haven't talked about yet? |
| 00:52:05 | 21 | A. Yes. |
| 00:52:06 | 22 | Q. What are those? |
| 00:52:07 | 23 | A. I am currently leasing my vehicle to my |
| 00:52:13 | 24 | daughter's company and my office equipment as well for |
| 00:52:25 | 25 | $300 a month. |

| | | |
|---|---|---|
| 00:52:30 | 1 | Q. What is the name of your daughter's |
| 00:52:31 | 2 | company? |
| 00:52:31 | 3 | A. Go, G-O, apostrophe -- I'm sorry -- |
| 00:52:38 | 4 | exclamation point, Detailing, D-E-T-A-I-L-I-N-G. |
| 00:52:41 | 5 | Q. Do you have any other sources of income? |
| 00:52:46 | 6 | A. No. |
| 00:52:49 | 7 | Q. Have you paid any -- anything out of |
| 00:53:03 | 8 | pocket for medical expenses that you've incurred as a |
| 00:53:08 | 9 | result of your injury in December of 2004? |
| 00:53:10 | 10 | A. Yes. |
| 00:53:12 | 11 | Q. Do you know approximately how much? |
| 00:53:17 | 12 | A. The amount that OWCP would not reimburse |
| 00:53:23 | 13 | me on medications, approximately $25, and the cost of |
| 00:53:30 | 14 | another sling. |
| 00:53:34 | 15 | I need to back up. I apologize. That |
| 00:53:38 | 16 | sling was for my right arm and that was not part of |
| 00:53:40 | 17 | this accident. That's a different OWCP. |
| 00:53:43 | 18 | Q. Okay. |
| 00:53:43 | 19 | A. Sorry. So I guess just the medication and |
| 00:53:49 | 20 | some travel was not reimbursed. Also -- no, I think |
| 00:53:09 | 21 | that's it. I think OWCP covers everything else -- |
| 00:54:09 | 22 | Q. Okay. |
| 00:54:09 | 23 | A. -- that I have. |
| 00:54:09 | 24 | Q. Have you provided any documentation to |
| 00:54:11 | 25 | your attorney to support those out-of-pocket expenses? |

| | | |
|---|---|---|
| 00:54:16 | 1 | A. I don't recall I did. |
| 00:54:18 | 2 | Q. Okay. |
| 00:54:23 | 3 | A. I have another OWCP filed. |
| 00:54:32 | 4 | Q. We're about to move to talking about your |
| 00:54:35 | 5 | EEO complaint to the Bureau of Reclamation. |
| 00:54:37 | 6 | Would you like a short break before we do |
| 00:54:39 | 7 | that or would you like to continue? |
| 00:54:40 | 8 | A. I would like a break. |
| 00:54:42 | 9 | Q. Okay. |
| 00:54:42 | 10 | (Whereupon, a recess was taken in the |
| 01:07:22 | 11 | proceedings.) |
| 01:07:22 | 12 | BY MS. HIRNEISEN: |
| 01:07:26 | 13 | Q. Ms. Riley, I'm now going to give you what |
| 01:07:28 | 14 | has been marked as Exhibit 1. |
| 01:07:38 | 15 | Is this a letter authored by you? |
| 01:07:39 | 16 | A. Yes, it is. |
| 01:07:40 | 17 | Q. Okay. And this is a document dated August |
| 01:07:42 | 18 | 11, 2004. I believe this is something that was |
| 01:07:46 | 19 | produced by the plaintiff. It's Bates-labeled Riley |
| 01:07:50 | 20 | 034 through 038 and, Ms. Riley, this is a two-page |
| 01:08:06 | 21 | letter that you wrote to Tess Yiamarelos. |
| 01:08:09 | 22 | Correct? |
| 01:08:09 | 23 | A. Correct. |
| 01:08:10 | 24 | Q. At the Bureau of Reclamation, and she is |
| 01:08:14 | 25 | an EEO counselor. |

| | | |
|---|---|---|
| 01:08:15 | 1 | Correct? |
| 01:08:15 | 2 | A. To my understanding. That's how she |
| 01:08:18 | 3 | represented herself. |
| 01:08:20 | 4 | Q. Okay. And then the third page of this |
| 01:08:23 | 5 | document is a request for relief signed by you. |
| 01:08:26 | 6 | Is that correct? |
| 01:08:26 | 7 | A. Correct. |
| 01:08:28 | 8 | Q. Now, that document is dated 8-13-04 by |
| 01:08:40 | 9 | you. |
| 01:08:40 | 10 | Correct? |
| 01:08:40 | 11 | A. Correct. |
| 01:08:40 | 12 | Q. Was page 3 of Exhibit 1 submitted at the |
| 01:08:44 | 13 | same time as the letter dated August 11, 2004? |
| 01:08:47 | 14 | A. I believe so, yes. |
| 01:08:51 | 15 | Q. Okay. And then page 4 of Exhibit 1 is |
| 01:08:54 | 16 | what appears to be an organizational chart of some |
| 01:08:57 | 17 | fashion. |
| 01:08:58 | 18 | Is that correct? |
| 01:08:58 | 19 | A. Correct. |
| 01:09:00 | 20 | Q. Is that something that you prepared? |
| 01:09:02 | 21 | A. At Ms. Yiamarelos' request, yes. |
| 01:09:07 | 22 | Q. Okay. And did you also submit that |
| 01:09:10 | 23 | document with a letter dated August 11, 2004, if you |
| 01:09:15 | 24 | recall? |
| 01:09:15 | 25 | A. I believe I did, but it may have been sent |

1   I'm not positive.
2       Q.    After you were injured on December 3rd,
3   did you return to the office?
4       A.    December 3rd, the accident? Not on
5   December 3rd I didn't.
6       Q.    Did you return to work at any time after
7   December 3rd?
8       A.    Yes.
9       Q.    When did you return to work?
10      A.    The next Monday, which would have been the
11  6th.
12      Q.    Okay. So you don't recall whether you
13  authored this letter at work or at home?
14      A.    I believe I probably did. I think I did.
15  I may have stayed late and worked on that.
16      Q.    So you think you did it at work?
17      A.    Yeah, it's probably very likely I did. I
18  may have been there late.
19      Q.    Did you work the following day on December
20  7th? December 7th is the date you authored the letter,
21  but you said you returned to work on the 6th. And then
22  were you also there on the 7th?
23      A.    Yes.
24      Q.    And how about the 8th?
25      A.    Yes.

1       Q.    Did you work that whole week of December
2   6th?
3       A.    Except for -- I have to check a calendar
4   to be sure if I was off for any, you know, time. There
5   may have been some sick leave in there, but I think
6   pretty much yes, except I know the 10th was Friday and
7   fairly sure I had a doctor's appointment in the
8   afternoon -- or not doctor -- physician assistant prime
9   care appointment.
10      Q.    At what point did you stop working?
11      A.    You mean physically going to the office?
12      Q.    Yes.
13      A.    The afternoon of December 20th,
14  approximately 2:30 in the afternoon.
15      Q.    Why is that the point in time that you
16  stopped going to the office?
17      A.    I had been to my primary OWCP. He's not
18  OWCP, but he's over my injuries. I've been to Dr.
19  Runyon to be assessed for my injuries and he ordered me
20  off work. And so I had to return because you're
21  required to fill out the paperwork and my daughter
22  drove me.
23      Q.    So you returned to the office for
24  approximately two weeks after you were injured. Does
25  that sound about correct?

1       A.    Well, let's see. Two and-a-half weeks
2   average approximately.
3       Q.    Somewhere two to three weeks?
4       A.    How much time was off, I don't know.
5   Yeah.
6       Q.    What did you do during that time period
7   between the time you were injured and the time that
8   your doctor told you not to return to work?
9       A.    I participated in a few meetings. I had
10  to give information for the accident, which required a
11  little bit of time filling out forms. I typed with
12  this hand (indicating), tried to fulfill duties that
13  had been assigned to me to do. I told them I was in a
14  lot of pain. I was taking pain medication. I set up
15  the Steering Committee or -- yeah, the meeting for
16  December 10th or actually, I worked with the secretary
17  who was setting it up, giving her the particulars,
18  various things, trying to do work that hurt.
19      Q.    I'll have you give me back Exhibit 3 and
20  now I'm going to give you what's been marked as Exhibit
21  4. And that is a letter dated December 31, 2004 that
22  is authored by you; correct?
23      A.    Correct.
24      Q.    And that letter is to the Director of the
25  Office of Equal Opportunity, Secretary of the Interior

1   in Washington; correct?
2       A.    Correct.
3       Q.    And this letter indicates you sent it by
4   certified mail, true?
5       A.    Correct.
6       Q.    And at the top of the letter you have "RE:
7   1) Retaliatory (Reprisal) Action by Management and 2)
8   Breech of Settlement Agreement." Correct?
9       A.    Correct.
10      Q.    Was this letter your formal notice that
11  you were adding additional EEO complaints arising from
12  the breach of the settlement agreement and by what you
13  thought was retaliatory action by management?
14          MR. CONLEY: Object to form.
15          THE WITNESS: I'm not entirely sure what
16  you mean by some of those terms. So without more
17  understanding of legal, I don't feel comfortable
18  answering that precisely.
19  BY MS. HIRNEISEN:
20      Q.    Let me ask you this, then: Why did you
21  send this letter via certified mail?
22      A.    Oh, I sent almost everything by certified
23  mail. Too many things get lost. So it's very common
24  for me to send things whenever possible.
25      Q.    Did anyone instruct to you send that

Exhibit D



# United States Department of the Interior

**BUREAU OF RECLAMATION**
Yuma Area Office
7301 Calle Agua Salada
Yuma, Arizona 85364



APR 2 6 2005

**ADMINISTRATIVELY RESTRICTED**

Ms. Cheryl Riley
1562 West 15th Street
Yuma, AZ  85364

Dear Ms. Riley:

In a letter dated March 25, 2005, Mr. Thayer Broili, Environmental & Hazardous Materials Group Manager, proposed that you be removed from your position and from the Federal service. The proposal was based upon your inability to perform the essential functions of your assigned position of Natural Resource Specialist.

You were notified that you had a right to reply to the proposal within fifteen days from the date you received it.  You were advised that you could have requested additional time, if necessary, to reply to the proposal.  You were also advised to direct your replies to me within the fifteen day time limit.  If you had questions or concerns about the reasons for the proposal or other personnel matters, you were given the names and telephone numbers of the regional Human Resources Specialists who are available to assist you.

As of April 25, 2005, you had not made any reply to me on the proposed action against you.  I have carefully reviewed the proposal letter, the evidence relied upon in support of the proposal, and all of the information available to me in this case.  Your lengthy absences are not a condition that management can accommodate permanently.  An essential element of any government job is an ability to appear for work and to complete tasks within a reasonable period of time.  A regular and reliable level of attendance is a necessary component of most jobs, including yours.  We have temporarily accommodated your medical condition to the best of our ability so you could seek treatment.  However, the mission of the team cannot be accomplished without a Natural Resource Specialist who can report to duty and be ready, willing, and able to complete work on a regular basis.

My decision is that the reason and specification are sustained. I find the proposal is fully supported and warrants your non-disciplinary removal.  Therefore, you will be removed from your position effective April 29, 2005.  This action is in accordance with the provisions of 5 U.S.C. Chapter 75 and is for such cause as will promote the efficiency of the service.  It is not disciplinary in nature.

This action creates an opportunity for you to submit an application for disability retirement based upon your medical condition and your inability to perform your present duties. Your application will be reviewed and a final determination made by the Office of Personnel Management. If you are interested in pursuing this option, please contact Ms. Edee Rissetto at 702-293-8157.

You have the right to choose to appeal this action in one of the following two avenues:

(1)   You may grieve this action in accordance with the provisions of Article 10 of the Negotiated Labor Agreement with the National Federation of Federal Employees, Local 1487; or

(2)   You may appeal this action to the Merit Systems Protection Board (MSPB). If you choose to appeal this action to MSPB, you must do so within 30 calendar days of the effective date of the action. The appeal must be delivered to the Chief Administrative Judge, Denver Field Office, 165 South Union Boulevard, Suite 318, Lakewood, CO 80228, Fax: 303-969-5109. Your appeal must be in writing, stating the reasons you feel your removal is not warranted. You may submit any evidence you feel necessary to support your appeal. The MSPB guidelines for submission of an appeal and the MSPB Appeal Form are enclosed with this letter. As an alternative, you may file an MSPB appeal electronically. For information on electronic filing, you can visit the MSPB website at www.mspb.gov.

You may elect either the MSPB appeal procedure or the negotiated grievance procedure, but not both. Your choice of appeal procedure is final. Standard Form 50 effecting your removal will be forwarded to you when available.

Please call me at 343-8215 to make arrangements to return your government issued card key, identification card, MasterCard, calling card, cellular telephone, pocket PC, and any other items you may still have in your possession.

Sincerely,

Cynthia Hoeft, Director
Resource Management Office

Enclosure

cc:  Regional Director, Boulder City, NV
     Attn: LC-5120 (Rissetto); LC-5220 (Ruhnau) (w/o encl to ea)

RIL.DOI.00670



# United States Department of the Interior



IN REPLY REFER TO:

YAO 720.0
PER 17.10

MAR 2 5 2005

CERTIFIED - RETURN RECEIPT REQUESTED (7004 1160 0002 5652 1598)

**<u>Administratively Restricted</u>**

Ms. Cheryl Riley
1562 West 15th Street
Yuma, AZ  85364

Dear Ms. Riley:

The purpose of this letter is to notify you that I am proposing a non-disciplinary action to remove you from your position of Natural Resource Specialist and from the Federal service for your inability to perform the essential functions of your assigned position.  This action is proposed under the authority of 5 USC Chapter 75.  This action will become effective no earlier than 30 calendar days from the date you receive this notice.

This proposed removal is based upon the following:

**Reason:**  Medical inability to perform the essential functions of the position of Natural Resource Specialist.

**Specification:**  You submitted medical documentation to me dated January 4, 2005, in which your doctor indicated that you will be treated for a medical condition that has rendered you completely incapacitated for duty.  The note indicated that you were to be off work until at least the end of June 2005.  The most recent information we have received (telephone conversation with Nurse David White) indicates that the actual date of possible return to work is questionable and may extend beyond the end of June.  Additionally, in a conversation between you and Ms. Cherie Jones on March 10, 2005, you stated that you had no intention of returning to work for at least six more months due to upcoming surgery and recovery.  Since the beginning of December, you have

used 27 hours of sick leave and 540 hours of COP/OWCP (through March 25, 2005). There is no prognosis to indicate that you will be able to report for work and to complete your assigned tasks within a reasonable period of time.

This action is necessary to promote the efficiency of the service. This proposed action is not disciplinary in nature. It is proposed because of your inability to perform the essential duties and responsibilities of your position due to your medical condition. The results of your condition render you unable to perform your duties with or without reasonable accommodation. An essential element of any government job is an ability to appear for work and to complete tasks within a reasonable period of time. A regular and reliable level of attendance is a necessary component of most jobs, including yours. We have temporarily accommodated your medical condition by granting you liberal leave to seek treatment. However, this accommodation was made temporarily based upon workload considerations. We cannot accomplish the mission of our group without a Natural Resource Specialist who can report to duty and be ready, willing and/or able to complete work on a regular basis. Management cannot continue to allow you to occupy a position in which you will not be able to perform in the foreseeable future. Some degree of regular, predictable attendance is fundamental to the position of Natural Resource Specialist.

You have the right to reply to this notice, orally, in writing, or both to Ms. Cindy Hoeft, Resource Management Office Director, within fifteen days of the date you receive this notice. You may submit affidavits and statements in support of your reply, or any other documentation you feel is relevant. You will be allowed official time not to exceed four hours to secure affidavits, review the material relied upon to support this proposed action, and prepare and present a reply. Arrangements for the use of official time must be made with me in advance. If you need more time to reply to this notice, consideration will be given to extending the reply period if you present a written request to Ms. Hoeft showing sufficient reasons why an extension is necessary. Otherwise, all correspondence, including a written reply, should be directed to Ms. Hoeft within the fifteen day limit as mentioned above.

The final decision to effect this proposed action has not been made. Ms. Hoeft will make the final decision after giving your reply full and impartial consideration, or after expiration of the time period allowed for a reply, if you do not make one.

RIL.DOI.00672

You will be notified in writing of the final decision. This action will not have an effect upon any entitlement you may have to benefits in accordance with OWCP regulations.

You may be eligible to apply for a disability retirement based upon your medical condition and your inability to perform your present duties. The final determination will be made by the Office of Personnel Management (OPM). If you would like more information about this process, please contact Ms. Edee Rissetto at 702-293-8157.

If you do not understand the reasons for this proposed action or need additional information, you may contact Ms. Sally Ruhnau, Human Resources Specialist, for further explanation. She can be reached at 702-293-8462.

Please acknowledge receipt of this notice by signing the copy provided and returning it to me in the envelope provided.

Sincerely,

Thayer Broili

Thayer Broili
Manager, Environmental &
    Hazardous Materials Group

Enclosures - 2

I acknowledge receipt of this Notice of Proposed Removal.

_____          _____
Cheryl Riley                              Date

cc:  Regional Director, Boulder City, NV
        Attn:  LC-5221 (Ruhnau), LC-5120 (Rissetto)

Exhibit E



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

**IN REPLY REFER TO**

JAN 2 7 2005

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Ms. Cheryl J. Riley
1562 W. 15th Street
Yuma, Arizona 85364

Dear Ms. Riley:

This is in reference to the breach of settlement agreement claim you file against the Bureau of Reclamation (BOR). In your claim you stated that on November 7, 2004, you found out that Mr. Rex Wahl disclosed specific information that was discussed in one of the mediation sessions which led to the Resolution Agreement (Agreement) you signed on October 7, 2004, to at least one of your coworkers. You also stated that Mr. Wahl retaliated against you by creating a hostile workplace.

We have reviewed your claim and the Agreement to determine whether or not the Agreement has in fact been breached. Our comments, findings and conclusions follow.

The Agreement between you and the BOR states that the Agency agrees to:

1.      **Detail the Complainant from her current position, National Resource Specialist, GS-0401-09/11, to the HAZMAT Team under Ron Curiel, Team Leader, for a 60-day period beginning October 11, 2004, to allow the parties a cooling-off period.**

We have received documentation from the BOR that you were detailed from your position of National Resource Specialist to Unclassified Duties on the Hazardous Material (HAZMAT) Team from October 11, 2004 to December 9, 2004. (Attachment B). The BOR has complied with term 1 of the Agreement.

2.      **Supervisor Thayer Broili and Team Leader Ron Curiel will discuss with the Complainant her role and responsibilities on the HAZMAT Team while on detail within the week of October 11, 2004.**

We have received documentation that you met with the Supervisor, HAZMAT Team Leader to discuss your work assignments on October 12, 2004, and the HAZMAT Team on October 13, 2004, to discuss specific your work assignments. Included in the discussions were the tasks that

1

would be assigned to you while on detail. Documentation also shows that you requested to keep some previously assigned Environmental Team work. (Attachment C). The BOR has complied with term 2 of the Agreement.

**3.     Supervisor Thayer Broili will develop an individual development plan for the Complainant for her current position of Natural Resource Specialist, GS-0401-09/01, within 60-days of the execution of this agreement.**

We have received documentation from the BOR that you were provided an IDP covering your detail to the HAZMAT Team on December 7, 2004. (Attachment D). Additional documentation shows that the BOR requested that you develop an additional IDP that would focus on your development as a member of the Environmental Team, under your current position of Natural Resource Specialist, since your detail to the HAZMAT Team was temporary. Because you did not respond to the BOR's request to develop and additional IPD, the BOR drafted and presented you with an IPD covering your position of Natural Resource Specialist on December 17, 2004. Further documentation shows that due to your extended leave status, the IDP has not been implemented. (Attachment E). The BOR has complied with term 3 of the Agreement.

**4.     To improve communication, the Complainant and Supervisor Thayer Broili will meet weekly for a period of at least six months, unless either party is on leave, travel, or involved in work exigency/emergencies.**

We have received documentation that weekly meetings have been established between you and Supervisor Broili. Documented meeting were held on October 22, October 27, November 24, 2004. No meetings were held during the week of November 15 and December 6, 2004 due to the absence of either you or the supervisor. The BOR has complied with term 4 of the Agreement.

**5.     Provide team-building training for the Environmental and HAZMAT Group of the Resource Management Office beginning November 2004.**

We have received documentation from the BOR that a team building meeting/training session was held on December 13 and 14, 2004. (Attachment F). The BOR has complied with term 5 of the Agreement.


## FINDING

Based on the above, we have determined that the BOR has complied with all five terms of the Agreement and that has been no breach. Regarding the matters you raised in your letters dated December 7, 2004 and December 31, 2004, of retaliation and hostile workplace, we find that these are new issues. EEO Regulations 29 C.F.R. 1614.105(1) states that an aggrieved person must initiate contact with a Counselor within 45 days of the date the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. Therefore, if you believe you have been subjected to unlawful discrimination, you must

RIL.DOI.00005

bring the matters before an EEO Counselor within <u>45 calendar days</u> of your receipt of this letter. For assistance in locating an EEO Counselor, you may contact Patricia Miller, Acting EEO Manager, BOR at (303) 445-3680. We encourage you to work with the BOR in reaching early resolution. This is the final agency decision of the Department of the Interior. If you are dissatisfied with this decision, you may exercise the appeal rights set forth hereinafter.

## APPEAL RIGHTS TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Section 1614.402[a] provides that an appeal of the agency's final order to the Commission must be filed by an appellant within thirty [30] days of receipt of an agency's or Administrative Judge's dismissal, final action, or decision. If the complainant is represented by an attorney of record, the 30-day time limit shall begin to run from the date of receipt by the attorney of the notice of dismissal, final action, or final decision without a hearing. All such appeals must be filed with the Commission at the following address:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> Post Office Box 19848
> Washington, D.C. 20036

As an alternative to mailing, appeals may be hand-delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> 1801 L Street, N.W.
> Washington, D.C. 20507

As a further alternative, appeals may be sent by facsimile (fax) to:

> (202) 663-7022

The appellant shall furnish a copy of the appeal to the agency at the same time it is filed with the Commission. In or attached to the appeal to the Commission, the appellant must certify the date and method by which service was made on the opposing party. The individual appellant should use EEOC Form 573, Notice of Appeal/Petition (copy enclosed).

## CIVIL ACTIONS

In lieu of an appeal to the Commission, you may file a civil action in an appropriate United States District Court within <u>90 calendar days</u> of receipt of this final order.

RIL.DOI.00006

If you file an appeal with the Commission, and you are not satisfied with the Commission's decision, you may file a civil action in a United States District Court within 90 calendar days of receipt of the Commission's final decision.

You may also file a civil action any time after 180 calendar days from the date of filing an appeal with the Commission, if there has been no final decision by the Commission.

Upon request of the complainant, the Civil Rights Act and the Rehabilitation Act give the Court discretionary authority to appoint an attorney without payment of fees or costs by the complainant. The grant or the denial of your request is within the sole discretion of the Court. Your request and the civil action must be filed within 90 days of the date the final decision is received. Please note that the Age Discrimination in Employment Act contains no specific provision for a court-appointed attorney.

If you file a civil action involving this complaint, you must specifically name the Secretary of the Department of the Interior, Gale A. Norton, as defendant. Failure to do so may result in the loss of any judicial redress to which you may be entitled.

It is important to note that 29 C.F.R. Section 1614.410 states, "Filing of a civil action under 1614.408 or 1614.409 shall terminate Commission processing of the appeal. If a private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Sincerely,

Sharon D. Eller
Director
Office for Equal Opportunity

Enclosure   -  EEOC Appeal Form

cc:    Patricia Miller, Acting EEO Manager, Bureau of Reclamation

4

RIL.DOI.00007

Exhibit F



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Cheryl J. Riley,
Complainant,

v.

Dirk Kempthorne,
Secretary,
Department of the Interior,
Agency

Appeal No. 01A61936

## DECISION

Complainant filed a timely appeal with this Commission from an agency final decision dated December 13, 2005, finding that it complied with the terms of an October 7, 2004 settlement agreement. The Commission accepts the appeal. *See* 29 C.F.R. § 1614.402; 29 C.F.R. § 1614.504(b); and 29 C.F.R. § 1614.405.

The October 7, 2004 settlement agreement provided, in pertinent part, that:

> 1.    [The agency will] detail the complainant from her current position, Natural Resource Specialist, GS-0401-09/01, to the HAZMAT Team, under [Team Leader B], for a 60-day period, beginning October 11, 2004, to allow the parties a cooling-off period.
>
> 2.    [Supervisor A] and [Team Leader B] will discuss with the complainant her role and responsibilities on the HAZMAT Team, while on detail, within the week of October 11, 2004.
>
> 3.    [Supervisor A] will develop an individual development plan for the complainant for her current position of Natural Resource Specialist, GS-0401- 09/01, within 60-days of the execution of this agreement.
>
> 4.    To improve communication, the complainant and [Supervisor A] will meet weekly for a period of at least six months, unless either party is on leave, travel, or involved in work exigency/emergencies, and

RIL.DOI.00167

2

01A61936

5.     [The agency will] provide team-building training for the Environmental and HAZMAT  Group of the Resource Management Office, beginning November 2004.

By letter to the agency dated December 7, 2005, complainant claimed that the agency breached the above referenced provisions of the settlement agreement.  In a December 31, 2005 letter, complainant further alleged that Team Leader A, whom she identified as the responsible management official in her complaint, continued to harass her during her 60-day reassignment, as well as afterwards.

On January 27, 2005, the agency issued a final decision, finding that it had fully complied with the above referenced terms of the settlement agreement.  On appeal, the Commission affirmed the agency's  determination that it complied with provisions 2, 3, 4, and 5.  However, the Commission determined that the record was inadequate to make a determination as to whether the agency complied with provision 1.  Therefore, the Commission remanded the case to the agency to undertake evidentiary development and to render a decision on this issue.  *Riley v. Department of the Interior*, EEOC Appeal No. 01A52759 (October 19, 2005)

In its December 13, 2005 decision, the agency indicates that it obtained statements from the involved agency officials, along with pertinent supporting documentation, and determined that management complied with provision 1.  In particular, the agency found that management reassigned complainant to Team Leader B for a 60-day period, and that 80-85% of her time was spent on Team B tasks.  The agency noted that 15-20% of her time was spent on Team A tasks, but found that complainant had requested to perform these tasks for her own professional development.  Moreover, the agency found that contact between complainant and Team Leader A concerning the performance of these tasks was kept to an absolute minimum.  Therefore, the agency determined that it had complied with provision 1.  Complainant now appeals this determination.

On appeal, complainant contends that she did not request to retain any tasks from Team A, and, in fact, objected to the assignment of these tasks in that it would not give her the "cooling off" period so essential to the settlement agreement.  Complainant further asserts that Team A tasks occupied far more of her time than the percentages reflected in the agency's decision (approximately 60 percent of her time).  In particular, complainant notes that one of these Team A tasks necessitated performing work in the field, something she did not want to do because of a prior injury.  In fact, complainant asserts that she sustained another injury in the performance of this field work, which rendered her disabled, and lead to her removal from her position.  Complainant contends that she spent so much of her time on Team A tasks while in her 60-day assignment to Team B, that it constituted a breach of provision 1.  Additionally, complainant contends that this action defeated the entire purpose of the reassignment, which was to remove her from the influence of Team Leader A for a 60-day cooling off period.

RIL.DOI.00168

3                                               01A61936

EEOC Regulation 29 C.F.R. § 1614.504(a) provides that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. The Commission has held that a settlement agreement constitutes a contract between the employee and the agency, to which ordinary rules of contract construction apply. *See Herrington v. Department of Defense*, EEOC Request No. 05960032 (December 9, 1996). The Commission has further held that it is the intent of the parties as expressed in the contract, not some unexpressed intention, that controls the contract's construction. *Eggleston v. Department of Veterans Affairs*, EEOC Request No. 05900795 (August 23, 1990). In ascertaining the intent of the parties with regard to the terms of a settlement agreement, the Commission has generally relied on the plain meaning rule. *See Hyon O v. United States Postal Service*, EEOC Request No. 05910787 (December 2, 1991). This rule states that if the writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature. *See Montgomery Elevator Co. v. Building Eng'g Servs. Co.*, 730 F.2d 377 (5th Cir. 1984).

The agency obtained statements from Team Leaders A and B, as well as their Supervisor. According to the Supervisor and Team Leader B, complainant requested that she retain some of her Team A duties while performing her 60-day assignment for Team B. However, in his statement, Team Leader A, indicates that it was he who became concerned about how these tasks would be completed in the absence of complainant, and provided the Supervisor with a list of these tasks, which he attached to his statement. These tasks were assigned to complainant. We find that this statement and list of tasks supports complainant's contention that she did not request to retain this work while in her 60-day assignment. Furthermore, we find that this list of tasks consists of four items, and that three of them concern editing of some written materials, which is clearly minor and would not have consumed much of complainant's time, relative to her 60-day detail. However, one task concerns the field work which complainant contends consumed much of her time, and which she did not want to perform because her prior injury made this work difficult for her. Complainant also contends that this work brought her into contact with Team Leader A, defeating the "cooling off" period. We note that in its supplemental evidence, the agency fails to provide any documentary confirmation of the actual amount of time, quantified in terms of hours or days, complainant spent in any of the Team A tasks, to include the field work.

After careful review of the record, to include complainant's appeal statement wherein she contends that she spent approximately 60 percent of her time working on tasks "directly under the purview of Team Leader A," we find that complainant's reassignment to Team B did not significantly remove her from Team Leader A's influence, and this reassignment to Team B did not achieve a primary objective of the settlement agreement, i.e., to provide complainant with a "cooling off" period. Accordingly, we find that the agency breached provision 1. Moreover, we find that the most appropriate remedy in this situation is to rescind the settlement agreement and to reinstate complainant's complaint at the point at which processing ceased. *See* 29 C.F.R. § 1614.504 (c).

RIL.DOI.00169

4                                                          01A61936

As to complainant's contention that Team Leader A subjected her to a hostile work environment during the 60-day reassignment period, and thereafter, we find that this constitutes a separate claim of discrimination. We also find that complainant's contention that she was improperly assigned to field work because of her prior injury, resulting in a new injury, and her ultimate removal from the agency, also constitute separate claims of discrimination. *See* 29 C.F.R. § 1614.504 (c). Therefore, should complainant desire to pursue these matters in the EEO process, we advise her to contact an EEO Counselor.

Accordingly, we **REVERSE** the agency's final decision finding compliance with provision 1, and as a remedy, we rescind the settlement agreement and **REMAND** this case for the agency to reinstate the underlying complaint at the point at which processing ceased, as set forth in the **ORDER** below.[3]

## ORDER

Within thirty (30) calendar days of the date that this decision becomes final, the agency shall reinstate the captioned complaint at the point at which processing ceased. The agency is ordered to provide complainant with written notice of this action contemporaneously with the reinstatement of the complaint.

A copy of the agency's notice to complainant, and any other supporting evidence that demonstrates reinstatement and continued processing of the complaint, must be sent to the Compliance Officer as referenced below.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the

---

[3]Under the above referenced provisions of the settlement agreement, it does not appear that complainant received any benefits which can be returned to the agency. Therefore, we find that it is unnecessary to restore the parties to *status quo ante* prior to rescinding the settlement agreement and reinstating the complaint.

RIL.DOI.00170

5                                          01A61936

underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action."  29 C.F.R. §§ 1614.407 and 1614.408.  A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999).  If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated.  See 29 C.F.R. § 1614.409.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration.  See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999).  All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036.  In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period.  See 29 C.F.R. § 1614.604.  The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.  Any supporting documentation must be submitted with your request for reconsideration.  The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.  See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint.  However, if you wish to file a civil action, you have the right to file such action in

RIL.DOI.00171



6                                                01A61936

an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

JUN - 8 2006

Date

RIL.DOI.00172




7                                                    01A61936

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Cheryl J. Riley
1562 W 15th St
Yuma, AZ 85364

Sharon D. Eller, Director
Office of Equal Opportunity
Department of the Interior
1849 C St., NW #MS5221
Washington, DC 20240

JUN - 6 2006
Date

Equal Opportunity Assistant

Exhibit G



# United States Department of the Interior

BUREAU OF RECLAMATION
Lower Colorado Regional Office
P.O. Box 61470
Boulder City, NV 89006-1470

TAKE PRIDE®
IN AMERICA

IN REPLY REFER TO:
LC-1700:
WBR-06-028

AUG 2 3 2006

CERTIFIED-RETURN RECEIPT REQUESTED

Cheryl J. Riley
1562 West 15th Street
Yuma, AZ 85364

Re: Cheryl J. Riley vs. Dirk Kempthorne, Secretary, U.S. Department of the Interior;
Docket Number WBR-06-028, Acceptance of Complaint of Discrimination

Dear Ms. Riley:

This is in reference to your formal complaint of discrimination filed against the Department of
the Interior, Bureau of Reclamation, on July 14, 2006. Based on the formal complaint and the
EEO Counselor's Report, we have determined that you are claiming discrimination based on race
(American Indian), sex (female), and reprisal for prior EEO activity. We have accepted the
following claims of discrimination for investigation.

Whether you were subjected to a hostile work environment from May 21, 2004 through July 30,
2004 when:

> Claim 1: you were subjected to demeaning, unprofessional behavior (yelling, threatening,
> intimidating) on the part of your Team Lead and Supervisor.

> Claim 2: your Team Lead and Supervisor publicly criticized you in front of others and
> ridiculed your ability to get work done.

> Claim 3: when your Supervisor limited your e-mail communications.

> Claim 4: the RMO Director held a meeting with your Team Lead and Supervisor
> regarding your EEO complaint.

Please review the accepted claims carefully. If you are not satisfied with the accepted claims as
stated, you may, **within (5) calendar days** of receipt of this letter, submit a statement to this
office concerning our articulation of your claims. It is important that your claims are properly
identified. Any unresolved differences regarding the identified claims will be recorded in the
complaint file.

You will be contacted by an EEO Complaints Investigator in the near future. It is expected that the investigation will be completed **within 180 calendar days** from the date you filed your complaint, or you will have the right to request a hearing before an Administrative Judge (AJ) from the Equal Employment Opportunity Commission (EEOC) after that time.

Upon completion of the investigation, you will be issued a copy of the Report of Investigation along with an election notice to request a hearing before an AJ or an immediate final agency decision without a hearing from the Director, Office of Civil Rights (OCR), Department of the Interior.

If you elect to have a hearing, you are required to certify to the AJ that you sent a copy of the hearing request to the Department. Your request for a hearing must be made directly to the EEOC at the following address:

> Equal Employment Opportunity Commission
> Phoenix District Office
> 3300 No. Central Avenue
> Phoenix, AZ 85012-2504

A copy of your request for a hearing should also be provided to:

> Marcella F. Guerra, LC-1700
> EEO Manager
> Lower Colorado Region, Bureau of Reclamation
> P.O. Box 61470
> Boulder City, NV 89006-1470

The hearing is an adjudicatory proceeding that completes the process of developing a full and appropriate record. The AJ will assume full responsibility for the adjudication of the complaint, including overseeing the development of the record. See 29 C.F.R. 1614.109 for more information about the hearing process.

If you request a final agency decision without a hearing, the Director, OCR, will issue the decision within **(60) calendar days** of its receipt of your request.

If you are not satisfied with the agency final decision, you may appeal that decision to the EEOC **within (30) calendar days** of your receipt of the decision, with a copy of the appeal to the Director, OCR. Your appeal must be mailed to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 19848
> Washington, DC 20036

2

RIL.DOI.00146

or, you may hand-deliver your appeal to the EEOC at the following address:

>   Office of Federal Operations
>   Appellate Review Programs
>   1801 L. Street, NW
>   Washington, DC 20507

or, you may fax your appeal to the EEOC at (202) 663-7022.

You have the right to file a civil action in an appropriate United States District Court after **180 calendar days** from the date you filed your complaint, if the Department has not issued a final decision, and you have not filed an appeal.

You also have the right to file a civil action **within 90 calendar days** of your receipt of EEOC's decision on your appeal, or after **180 calendar days** of filing an appeal if the EEOC has not issued a decision.

You will continue to receive specific information about your rights and responsibilities in the complaint process as your complaint progresses. If at any time you have questions regarding the process, please contact me at (702) 293-8182.

>   Sincerely,

>   *Marcella F. Guerra*
>   Marcella F. Guerra
>   EEO Manager

Enclosure
EEO Form 573

RIL.DOI.00147

Exhibit H



# United States Department of the Interior

BUREAU OF RECLAMATION
Lower Colorado Regional Office
P.O. Box 61470
Boulder City, NV 89006-1470

CERTIFIED MAIL                    OCT 0 5 2006
RETURN RECEIPT REQUESTED


John A. Conley
James Burr Shields
382 E. Palm Lane
Phoenix, AZ 85004-1531

RE: Amended Acceptance of Complaint of Discrimination - Docket No. WBR-06-028

Dear Mr. Conley:

Per your letter of August 31, 2006, we have amended the accepted claims for the above referenced EEO complaint of discrimination filed by your client, Cheryl J. Riley on July 14, 2006. This action was taken in order to further clarify the accepted issues for investigation. We have determined that she is claiming discrimination based on race (American Indian), sex (female) and reprisal for prior EEO activity. We have accepted the following claims of discrimination for investigation.

Whether she was subjected to a hostile work environment and racial harassment from May 21, 2004 through July 30, 2004, when:

Claim #1: she was subjected to demeaning, unprofessional behavior (yelling, threatening, intimidating) verbal and written comments, and when her professional knowledge, competence, and work was rejected and devalued by her Team Lead while men in the group were treated differently.

Claim #2: when she was spoken to in a defamatory, degrading, and demeaning manner by a co-worker; and publicly criticized in front of others; and her ability to get work done was ridiculed by her team lead and supervisor.

Claim #3: when assignments involving decision-making and/or status were taken away from her and assigned to a male employee; and she was instructed to limit e-mail communication within the group and to not send e-mails to the RMO Director by her Supervisor.

Claim #4: when the RMO Director held a meeting with her, the Team Lead, and her Supervisor regarding her EEO complaint without the presence of a requested neutral party.

Riley 0001


EXHIBIT
PENGAD 800-631-6989
16
11/16/07 PS
OCT 10 2006

If you have any questions regarding this letter, please contact me at 702-293-8182.

Sincerely,

Marcella F. Guerra,
EEO Manager

cc: Cheryl J. Riley, 1562 West 15th Street, Yuma, AZ 85364

Riley 0002

Exhibit I



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

FEB 2 4 2006

**RECEIVED**

MAR 0 3 2006

D-7320
ADM-14.00

CERTIFIED – RETURN RECEIPT REQUESTED

Cheryl Riley
1562 West 15th Street
Yuma, AZ 85364

Re:    Cheryl Riley vs. Gale A. Norton, Secretary, U.S. Department of the Interior,
Docket Number WBR-05-037

Dear Ms. Riley:

This is in reference to your formal complaint of discrimination filed against the U.S. Department of the Interior, Bureau of Reclamation, on April 2, 2005. Based on a review of the formal complaint and the Equal Employment Opportunity Counselor's Report, we have determined that you are claiming discrimination based on your race (American Indian), sex (female), and reprisal when:

> Claim 1:  Management failed to reassign you to a permanent position away from Mr. Wahl.
>
> Claim 2:  Management failed to prevent work-related interaction between you and Mr. Wahl.
>
> Claim 3:  Management failed to prevent a hostile work environment created by Ms. Hoeft, Mr. Broili, and Mr. Wahl.

The Equal Employment Opportunity Commission's (EEOC) discrimination complaint regulations at 29 C.F.R. 1614, 103(a), state that an agency shall process a complaint from any aggrieved employee or applicant for employment with the agency who believes that he/she has been discriminated against.  The regulations at 29 C.F.R. 1614.105(a) (1) requires an aggrieved person to contact an EEO counselor within 45 days of the discriminatory event or within 45 days of the effective date of the personnel action.  Aggrieved persons failing to bring a claim(s) to the attention of an EEO counselor in a timely manner may have their complaint dismissed pursuant to 29 C.F.R. 1614.107(a) (2).

RIL.DOI.00656

Your initial contact with an EEO Counselor was on January 27, 2005, and the initial interview took place on February 14, 2005. The date of the last incident occurred on December 4, 2004. This is more than the 45 days allowed, per the above-noted regulations, to contact an EEO Counselor. During your employment with the Bureau of Reclamation there was information posted that specifically stated that you must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or from the effective date of the personnel action. You have provided no information pertaining to circumstances which would warrant tolling, waiver, or estoppel of this requirement. Accordingly, we find that WBR-05-037 should be dismissed pursuant to 29 C.F.R. 1614.107(a)(2). If you are dissatisfied with this decision, you have the following appeal rights.

## APPEAL RIGHTS

You may file an appeal with the Equal Employment Opportunity Commission within 30 calendar days of receipt of this decision. The 30-day period for filing an appeal begins on the day after the date of receipt of this decision. The appeal shall be considered timely if it is delivered in person, by facsimile, or postmarked before the expiration of the applicable filing period. In absence of a legible postmark, the appeal will be considered timely if it is received by mail within five days of the expiration of the applicable filing period.

Appeals to the Commission should be forwarded to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P. O. Box 19848, Washington, D.C. 20036, with a copy to this Office. Any statement or brief in support of your appeal must be submitted to the Commission with a copy to this Office within 30 days of filing to Notice of Appeal. You may also hand-deliver your appeal to the commission at the Office of Federal Operations, 1801 L Street, NW, Washington, D.C. 20507, or by fax at (202) 663-7022. The complainant should use EEOC Form 573, Notice of Appeal/Petition (copy enclosed).

## CIVIL ACTIONS

In lieu of an appeal to the Commission, you may file a civil action in an appropriate United States District Court within 90 calendar days of receipt of the final decision.

If you file an appeal with the Commission, and you are not satisfied with the Commission's decision, you may file a civil action in a United States District Court within 90 calendar days of receipt of the Commission's final decision.

You may also file a civil action any time after 180 calendar days from the date of filing an appeal with the Commission, if there has been no final decision by the Commission.

Upon request of the complainant the Civil Rights Act and the Rehabilitation Act gives the Court discretionary authority to appoint an attorney without payment of fees or costs by the complainant. The grant or denial of your request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action.

2

RIL.DOI.00657

Both the request and the civil action must be filed within ninety (90) days of the date the final decision is received. Please note that the Age Discrimination in Employment Act contains no specific provision for a court appointed attorney.

If you file a civil action involving this complaint, you must specifically name the Secretary of the Department of the Interior, Gale A. Norton, as defendant. Failure to do so may result in the loss of any judicial redress to which you may be entitled.

It is important to note the 29 C.F.R. Section 1614.410 states, "Filing of a civil action under 1614.408 or 1614.409 shall terminate Commission processing of the appeal. If a private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Sincerely,

*Delia R. Trimble*

Delia R. Trimble
Deputy Director,
Office of Civil Rights

Enclosure: EEOC Appeal Form

cc: Debbie Rodriguez
    7301 Calle Agua Salada
    Yuma, AZ 85364

3

RIL.DOI.00658

Exhibit J

RILEY, CHERYL R.
INFORMAL: 6-13-05 (9-6-05)
FORMAL:
WBR: BOR-05-0451
Original Admin File
CLOSED 10/3/05

RIL.DOI.00667

# eryl J. Riley

1562 W. 15th Street  ◇  Yuma, Arizona 85364

Certified USPS Return Receipt No. 7005 0390 0002 8237 7900

June 11, 2005

Lorraine Bobian
Division of Equal Opportunity
Bureau of Reclamation
PO Box 25007
Denver, CO 80225-0007

Re:     Complaint of Retaliation By Cynthia Hoeft and Thayer Broili for Prior EEO Activity

Ms. Bobian:

I am herein filing with you a complaint against Thayer Broili and Cynthia Hoeft for taking action against me that I believe is retaliation for my having previously filed EEO complaints against each of them.

On March 27, 2005, I received a letter from Mr. Broili informing me that he was requesting that Ms. Hoeft terminate me from my position as Natural Resource Specialist for the Bureau of Reclamation Yuma Area Office in Yuma, Arizona and have me removed from Federal service because I had been injured on the job on December 3, 2004, and was unable to work.

On April 27, 2005, I received a letter from Ms. Hoeft informing me that she had taken action to have me terminated from my position and removed from Federal service effective April 29, 2005. On April 29, 2005, I was removed from Federal service.

Although Mr. Broili and Ms. Hoeft are claiming that they took this action against me because I became temporarily disabled due to the work injury, it is my belief that they took this action in retaliation for my prior EEO claims against them for harassment and retaliation. Ms. Hoeft had tried on another occasion to manipulate both the EEO process and personnel system to remove me from my job, which I described my previous EEO complaint.

Enclosed are copies of the letters informing me of the personnel actions taken against me.

Please note, my home telephone number has changed to (928) 329-6100.

Thank you for your attention to this matter.

Sincerely,

Cheryl J. Riley

Attachments

RIL.DOI.00668



# United States Department of the Interior

BUREAU OF RECLAMATION
Yuma Area Office
7301 Calle Agua Salada
Yuma, Arizona 85364

TAKE PRIDE
IN AMERICA

IN REPLY REFER TO.
YAO-7000
PER-17.10

APR 2 6 2005

<u>ADMINISTRATIVELY RESTRICTED</u>

Ms. Cheryl Riley
1562 West 15th Street
Yuma, AZ  85364

Dear Ms. Riley:

In a letter dated March 25, 2005, Mr. Thayer Broili,
Environmental & Hazardous Materials Group Manager, proposed that
you be removed from your position and from the Federal service.
The proposal was based upon your inability to perform the
essential functions of your assigned position of Natural Resource
Specialist.

You were notified that you had a right to reply to the proposal
within fifteen days from the date you received it.  You were
advised that you could have requested additional time, if
necessary, to reply to the proposal.  You were also advised to
direct your replies to me within the fifteen day time limit.  If
you had questions or concerns about the reasons for the proposal
or other personnel matters, you were given the names and
telephone numbers of the regional Human Resources Specialists who
are available to assist you.

As of April 25, 2005, you had not made any reply to me on the
proposed action against you.  I have carefully reviewed the
proposal letter, the evidence relied upon in support of the
proposal, and all of the information available to me in this
case.  Your lengthy absences are not a condition that management
can accommodate permanently.  An essential element of any
government job is an ability to appear for work and to complete
tasks within a reasonable period of time.  A regular and reliable
level of attendance is a necessary component of most jobs,
including yours.  We have temporarily accommodated your medical
condition to the best of our ability so you could seek treatment.
However, the mission of the team cannot be accomplished without
a Natural Resource Specialist who can report to duty and be
ready, willing, and able to complete work on a regular basis.

My decision is that the reason and specification are sustained.
I find the proposal is fully supported and warrants your non-
disciplinary removal.  Therefore, you will be removed from your
position effective April 29, 2005.  This action is in accordance
with the provisions of 5 U.S.C. Chapter 75 and is for such cause
as will promote the efficiency of the service.  It is not
disciplinary in nature.

RIL.DOI.00669

This action creates an opportunity for you to submit an application for disability retirement based upon your medical condition and your inability to perform your present duties. Your application will be reviewed and a final determination made by the Office of Personnel Management. If you are interested in pursuing this option, please contact Ms. Edee Rissetto at 702-293-8157.

You have the right to choose to appeal this action in one of the following two avenues:

    (1)    You may grieve this action in accordance with the provisions of Article 10 of the Negotiated Labor Agreement with the National Federation of Federal Employees, Local 1487; or

    (2)    You may appeal this action to the Merit Systems Protection Board (MSPB). If you choose to appeal this action to MSPB, you must do so within 30 calendar days of the effective date of the action. The appeal must be delivered to the Chief Administrative Judge, Denver Field Office, 165 South Union Boulevard, Suite 318, Lakewood, CO 80228, Fax: 303-969-5109. Your appeal must be in writing, stating the reasons you feel your removal is not warranted. You may submit any evidence you feel necessary to support your appeal. The MSPB guidelines for submission of an appeal and the MSPB Appeal Form are enclosed with this letter. As an alternative, you may file an MSPB appeal electronically. For information on electronic filing, you can visit the MSPB website at www.mspb.gov.

You may elect either the MSPB appeal procedure or the negotiated grievance procedure, but not both. Your choice of appeal procedure is final. Standard Form 50 effecting your removal will be forwarded to you when available.

Please call me at 343-8215 to make arrangements to return your government issued card key, identification card, MasterCard, calling card, cellular telephone, pocket PC, and any other items you may still have in your possession.

Sincerely,

Cynthia Hoeft, Director
Resource Management Office

Enclosure

cc: Regional Director, Boulder City, NV
    Attn: LC-5120 (Rissetto); LC-5220 (Ruhnau) (w/o encl to ea)



# United States Department of the Interior

BUREAU OF RECLAMATION
Yuma Area Office
7301 Calle Agua Salada
Yuma, Arizona 85364

TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:

YAO 720.0
PER 17.10

MAR 2 5 2005

CERTIFIED - RETURN RECEIPT REQUESTED (7004 1160 0002 5652 1598)

**Administratively Restricted**

Ms. Cheryl Riley
1562 West 15th Street
Yuma, AZ 85364

Dear Ms. Riley:

The purpose of this letter is to notify you that I am proposing a non-disciplinary action to remove you from your position of Natural Resource Specialist and from the Federal service for your inability to perform the essential functions of your assigned position. This action is proposed under the authority of 5 USC Chapter 75. This action will become effective no earlier than 30 calendar days from the date you receive this notice.

This proposed removal is based upon the following:

**Reason:** Medical inability to perform the essential functions of the position of Natural Resource Specialist.

**Specification:** You submitted medical documentation to me dated January 4, 2005, in which your doctor indicated that you will be treated for a medical condition that has rendered you completely incapacitated for duty. The note indicated that you were to be off work until at least the end of June 2005. The most recent information we have received (telephone conversation with Nurse David White) indicates that the actual date of possible return to work is questionable and may extend beyond the end of June. Additionally, in a conversation between you and Ms. Cherie Jones on March 10, 2005, you stated that you had no intention of returning to work for at least six more months due to upcoming surgery and recovery. Since the beginning of December, you have

RIL.DOI.00671

used 27 hours of sick leave and 540 hours of COP/OWCP (through March 25, 2005). There is no prognosis to indicate that you will be able to report for work and to complete your assigned tasks within a reasonable period of time.

*This action is necessary to promote the efficiency of the service.* This proposed action is not disciplinary in nature. It is proposed because of your inability to perform the essential duties and responsibilities of your position due to your medical condition. The results of your condition render you unable to perform your duties with or without reasonable accommodation. An essential element of any government job is an ability to appear for work and to complete tasks within a reasonable period of time. A regular and reliable level of attendance is a necessary component of most jobs, including yours. We have temporarily accommodated your medical condition by granting you liberal leave to seek treatment. However, this accommodation was made temporarily based upon workload considerations. We cannot accomplish the mission of our group without a Natural Resource Specialist who can report to duty and be ready, willing and/or able to complete work on a regular basis. Management cannot continue to allow you to occupy a position in which you will not be able to perform in the foreseeable future. Some degree of regular, predictable attendance is fundamental to the position of Natural Resource Specialist.

You have the right to reply to this notice, orally, in writing, or both to Ms. Cindy Hoeft, Resource Management Office Director, within fifteen days of the date you receive this notice. You may submit affidavits and statements in support of your reply, or any other documentation you feel is relevant. You will be allowed official time not to exceed four hours to secure affidavits, review the material relied upon to support this proposed action, and prepare and present a reply. Arrangements for the use of official time must be made with me in advance. If you need more time to reply to this notice, consideration will be given to extending the reply period if you present a written request to Ms. Hoeft showing sufficient reasons why an extension is necessary. Otherwise, all correspondence, including a written reply, should be directed to Ms. Hoeft within the fifteen day limit as mentioned above.

The final decision to effect this proposed action has not been made. Ms. Hoeft will make the final decision after giving your reply full and impartial consideration, or after expiration of the time period allowed for a reply, if you do not make one.

You will be notified in writing of the final decision. This action will not have an effect upon any entitlement you may have to benefits in accordance with OWCP regulations.

You may be eligible to apply for a disability retirement based upon your medical condition and your inability to perform your present duties. The final determination will be made by the Office of Personnel Management (OPM). If you would like more information about this process, please contact Ms. Edee Rissetto at 702-293-8157.

If you do not understand the reasons for this proposed action or need additional information, you may contact Ms. Sally Ruhnau, Human Resources Specialist, for further explanation. She can be reached at 702-293-8462.

Please acknowledge receipt of this notice by signing the copy provided and returning it to me in the envelope provided.

Sincerely,

Thayer Broili

Thayer Broili
Manager, Environmental &
    Hazardous Materials Group

Enclosures - 2

I acknowledge receipt of this Notice of Proposed Removal.

_____        _____
Cheryl Riley                            Date

cc:  Regional Director, Boulder City, NV
        Attn:  LC-5221 (Ruhnau), LC-5120 (Rissetto)



# United States Department of the Interior

**BUREAU OF RECLAMATION**
Lower Colorado Regional Office
P.O. Box 61470
Boulder City, NV 89006-1470

IN REPLY REFER TO:
LC-1700
ADM-14.00

SEP 0 9 2005

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Cheryl J. Riley
1562 W. 15th Street
Yuma, Arizona 85364

RE: Your letter of June 11, 2005

We have received your letter of June 11, 2005, regarding your claim of Retaliation for Prior EEO Activity.

Twenty-nine Code of Federal Regulations, §1614.105(a) states, "Aggrieved persons who believe they have been discrimination against on the basis of race, color, religion, sex, national origin, age, or disability must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter;" and 29 C.F.R., §1614.105(1) states, "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action."

Your letter of June 11, 2005, is considered an initial contact with the EEO Office, and not a formal complaint. As stated above you must make contact with an EEO Counselor, in order to begin the informal stage of your complaint.

Jadin Allmen of my staff is available for counseling. If you elect to go into counseling, please call Ms. Allmen at (702) 293-8174.

For your information, enclosed please find a copy of Procedures for Processing Individual Complaints of Discrimination.

If you have questions regarding this letter, I can be reached at (702) 293-8182.

Sincerely,

*Marcella F. Guerra*

Marcella F. Guerra
EEO Manager

Enclosure
✓cc: LORRAINE Bobian

RIL.DOI.00674

| Official File Copy | | |
|---|---|---|
| Date | SURNAME | CODE |
| 9/7/05 | Willis | LC-1701 |
| 9/9/05 | Guerra | LC-1700 |

Classification
EEO

Project
Initial Contact ltr

Control No.

Folder ID.
Riley, Cheryl J

LC-1700
ADM-14.00

SEP 0 9 2005

<u>CERTIFIED MAIL-RETURN RECEIPT REQUESTED</u>

Cheryl J. Riley
1562 W. 15th Street
Yuma, Arizona 85364

RE: Your letter of June 11, 2005

We have received your letter of June 11, 2005, regarding your claim of Retaliation for Prior EEO Activity.

Twenty-nine Code of Federal Regulations, §1614.105(a) states, "Aggrieved persons who believe they have been discrimination against on the basis of race, color, religion, sex, national origin, age, or disability must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter;" and 29 C.F.R., §1614.105(1) states, "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action."

Your letter of June 11, 2005, is considered an initial contact with the EEO Office, and not a formal complaint. As stated above you must make contact with an EEO Counselor, in order to begin the informal stage of your complaint.

Jadin Allmen of my staff is available for counseling. If you elect to go into counseling, please call Ms. Allmen at (702) 293-8174.

For your information, enclosed please find a copy of Procedures for Processing Individual Complaints of Discrimination.

If you have questions regarding this letter, I can be reached at (702) 293-8182.

Sincerely,

/s/

Marcella F. Guerra
EEO Manager

Enclosure
CC: Lorraine Bobian, Denver Office
WBR:JAllmen:gw:9-7-05:x8584:LC-1700
P:\eeo\1eeoCase(formerlyTess)\CONTACTS\fy05\informal\CounselorAuth_C.J..Riley.doc

RIL.DOI.00675

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

7004 1160 0002 9516 7560

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| Postage | $ | |
| Certified Fee | | Auth to Consider |
| Return Receipt Fee (Endorsement Required) | 9/8/05 | Informal Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | Initial Contest notification |
| Total Postage & Fees | $ | |

Sent To *Cheryl L. Riley*

Street, Apt. No.; or PO Box No. *1562 W. 15th Street*

City, State, ZIP+4 *Yuma AZ 85364*

PS Form 3800, June 2002          See Reverse for Instructions



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2 and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Cheryl L. Riley*
*1562 W. 15th Street*
*Yuma AZ 85364*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Cheryl L. Riley*    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  9/13/05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7004 1160 0002 9516 7560

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

RIL.DOI.00676

Issues—did not seek counseling