**Law Office of James Burr Shields**
**382 East Palm Lane**
**Phoenix, Arizona 85004-1531**
**(602) 307-0780 (Office)**
**(602) 307-0784 (Facsimile)**

James Burr Shields II, State Bar #011711
John A. Conley, State Bar #016429
W. Blake Simms, State Bar #021595
Attorneys for Plaintiff
johnconley@jbslaw.net

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| CHERYL J. RILEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DIRK KEMPTHORNE, Secretary ) <br> United States Department of the Interior ) <br> ) <br> Defendants. ) | Case No. CIV-06-2160-PHX-SRB <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> (Oral Argument Requested) |

Plaintiff, Cheryl J. Riley, by and through counsel undersigned, hereby responds to Defendant's motion for summary judgment. This response is supported by the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Summary Judgment Standard**

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must resolve all reasonable doubts in her favor. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Likewise, all inferences from the evidence must be drawn in favor of the non-moving party. *Owens v. Local 169*, 971 F.2d 347, 355 (9th Cir. 1992). This means that if there are any reasonable doubts or inferences which could result in a genuine issue of material fact, or if any rational fact finder could find for the Plaintiff, then summary judgment should be denied. *Madsen v. Allstate Ins. Co.*, 760 F.Supp. 1389, 1392 (D.Or. 1991),

1 aff'd., 972 F.2d 1340 (9th Cir. 1992), cert. denied, 507 U.S. 913 (1993). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Id*. (citations omitted). "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations, alterations and quotations omitted).

In a discrimination action, on summary judgment, the requisite degree of proof to establish a *prima facie* case is minimal and does not even need to rise to the level of preponderance of the evidence. *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1148 (9th Cir. 1997); *Yartzoff v. Thomas*, 809 F.3d 1371, 1375 (9th Cir. 1987). The Ninth Circuit has made clear that a high standard exists for the granting of summary judgment in employment discrimination cases. *See Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (courts require little evidence to deny summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry -- one that is most appropriately conducted by the factfinder, upon a full record) (citations omitted); *see also Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994) *(quoting Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

**Plaintiff Appropriately Exhausted Her Administrative Remedies**

On July 20, 2004, Cheryl Riley made her initial contact with Bureau of Reclamation ("BOR") Equal Employment Opportunity ("EEO") Counselor, Tess Yiamarelos, regarding the harassing, hostile and discriminatory behavior of Messrs. Thayer Broili and Rex Wahl. (SSOF ¶76)[1]. On July 30, 2005, after unsuccessfully attempting to resolve the matter with her supervisors, Ms. Riley contacted Ms. Yiamarelos and informed her that she wished to proceed to the formal

---

[1] The abbreviation "SSOF" refers to Plaintiff's Separate Statement of Facts."

1  stage of the complaint process. On August 8, 2005, Ms. Riley received from Ms. Yiamarelos the
2  appropriate forms to file a formal complaint. Ms. Riley completed and timely returned those forms
3  to the EEO counselor on August 11, 2005. (SSOF ¶¶77, 88, 92).
4        On October 7, 2004, Ms. Riley entered into a negotiated settlement agreement with the
5  agency regarding her EEO complaint. The agreement provided, in pertinent part, that:

6      "[The agency will] detail the complainant from her current position [under Team
7      Leader Wahl] to the HAZMAT Team under [Team Leader B], for a 60-day period,
8      beginning October 11, 2004, to allow the parties a cooling-off period. (See Exhibit
9      "A" to Defendant's SOF)

10  Despite the above agreement, the agency continued to allow Mr. Wahl to exercise supervisory
11  authority over Ms. Riley. Among other things, Mr. Wahl continued to assign Ms. Riley duties
12  including a field assignment which led to her sustaining severe physical injuries. Those debilitating
13  injuries ultimately caused her to be fired from the BOR. (SSOF ¶¶101-104)
14        Between October and November 2004, Ms. Riley repeatedly complained to agency officials
15  - telephonically and via e-mail - about Mr. Wahl continuing to exercise supervisory authority over
16  her in violation of the agreement. She also continued to complain to EEO officials of additional
17  instances of misconduct, in violation of Title VII, by Messrs. Wahl and Broili and Ms. Hoeft. It was
18  during this time period, for example, that Ms. Riley was required to perform a field assignment,
19  under the direction of Mr. Wahl, which resulted in a fall that caused her severe injury and,
20  ultimately, led to the termination of her employment. Ms. Riley's complaints about those matters
21  fell, largely, on deaf ears. (SSOF ¶¶106,113, 117, 119, 121; Exhibit 1 to Exhibit "A", Plaintiff's
22  Affidavit).
23        On December 7, 2004, Ms. Riley wrote to the Director of Equal Opportunity, for the
24  Department of the Interior, in Washington, D.C. informing him that the agency had violated its
25  resolution agreement with her. (SSOF ¶126). On January 27, 2005, the agency issued a final
26  agency decision finding that it had fully complied with the terms of the settlement agreement. (See
27  Exhibit "E" to Defendant's SOF). Ms. Riley timely appealed the agency's decision. After initially
28  remanding the case for further evidentiary development, the EEOC found that the agency had not

1  complied with the above-described provision of the settlement agreement and reversed the agency's
2  final decision. In that June 6, 2006 Order, the EEOC rescinded the settlement agreement and
3  reinstated Ms. Riley's underlying complaint[2] at the point in which processing ceased. *Riley v.*
4  *Department of the Interior,* EEOC Appeal No. 01A61936 (June 6, 2006); (SSOF ¶166).

5        On August 23, 2006, the agency sent a letter to Ms. Riley informing her of the claims it
6  accepted for investigation as part of Docket no. WBR-06-028. That letter limited the investigation
7  to only those claims concerning discrimination, harassment and retaliation which occurred prior to
8  Ms. Riley entering into the settlement agreement with the agency. This was despite the fact that
9  Ms. Riley had made several contacts with EEO officials regarding post-resolution agreement EEO
10 violations. (See Exhibit "G" to Defendant's SOF).

11       On August 31, 2006, counsel undersigned sent a letter to the agency which included all of
12 the claims of discrimination which Plaintiff had raised with EEO officials during and after the entry
13 into the negotiated settlement agreement. Said claims should have been included as part of
14 Plaintiff's original complaint of discrimination. On October 5, 2006, the agency responded to
15 counsel undersigned's August 31, 2006 letter and, again, agreed only to investigate those claims
16 which occurred prior to Ms. Riley entering into the settlement agreement with the agency. (See
17 Exhibit "H" to Defendant's SOF).

18       As provided by 29 CFR § 1614.106(d), a plaintiff may amend a complaint to include issues
19 like or related to those issues raised in the complaint at any time prior to the conclusion of the
20 investigation. The Office of Federal Operations, on June 6, 2006, directed the Agency to reinstate
21 Ms. Riley's complaint at the point at which processing had ceased. Processing had ceased prior to
22 the conclusion of the investigation. By Regulation, therefore, all of Ms. Riley's claims concerning
23 discrimination and retaliation by Mr. Wahl, Mr. Broili and Ms. Hoeft should have been made part
24 of her original complaint. Instead of amending Ms. Riley's original complaint to include the
25 aforementioned claims, the agency opened a new case regarding those claims and assigned it
26 Docket No. WBR-05-037.

---

28       [2]The agency assigned Docket no. WBR 06-028 to her original complaint.

As described above, the agency incorrectly ascribed a separate complaint number to the claims of retaliation and discrimination which occurred after Ms. Riley entered into the negotiated resolution agreement. Because those claims were like or related to the claims Ms. Riley raised in Docket No. WBR-06-028 (her original complaint), they should have been made part of that original complaint. 29 CFR § 1614.106(d).

By accepting some, but not all, of Plaintiff's claims in Docket No. WBR-06-028, the Agency necessarily dismissed those claims which were not accepted. *Id.* Under those circumstances, Plaintiff was allowed to either object to the dismissal and preserve the issue for review by an Administrative Law Judge, if she desired to pursue that avenue of complaint processing, or file a lawsuit in United States District Court within 90 days of the dismissal. 29 CFR § 1614.407(a). As the agency admits, Plaintiff's counsel timely objected to the Agency's failure to include Ms. Riley's like or related post-resolution agreement complaints in Docket No. WBR-06-028. Thus, preserving that issue for judicial review. 29 CFR § 1614.107(b). Plaintiff also timely filed this lawsuit on September 8, 2006; well within the 90 days to which she was statutorily authorized. (SSOF ¶¶170-171).

Incidents of discrimination not included in an EEOC charge may be considered by a federal court if the new claims are like or reasonably related to the allegations contained in the EEOC charge. *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation marks omitted); see also *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999) (stating that "forcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier"). In the instant case, Ms. Riley has timely exhausted her administrative remedies related to Docket No. WBR-06-028. The claims that the agency seeks to dismiss are: (1) like or related to those raised by Ms. Riley in Docket No. WBR-06-028; and (2) occurred after she made her initial complaint which was ultimately ascribed Docket No. WBR-06-

- 5 -

028 by the agency. Those post resolution agreement claims may, therefore, be considered by this Court.

Although it is true that the agency dismissed the claims described in Docket No. WBR-05-037 on February 24, 2006, those claims were superfluous. The agency incorrectly processed them as a new complaint. By regulation, they were part of Ms. Riley's original complaint. The fact that Ms. Riley did not appeal the dismissal of the redundant, duplicitous claims in Docket No. WBR-05-037 should not prevent her from pursuing her timely raised, post-settlement agreement claims. As made clear in *Green*, *supra*, even if Ms. Riley had never raised those claims through the EEO process, because they are like or related to the claims she initially raised, this Court may consider them. By alleging that Ms. Riley was required to pursue separate EEO complaints for those related claims, the agency is attempting to erect needless procedural barriers. *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999). Ms. Riley should be allowed to pursue all of the claims described in her U.S. District Court Complaint.

**Evidence of Race and Gender Discrimination Exists**

A disparate treatment complainant can establish a prima facie case of discrimination under Title VII by showing that (i) she belongs to a protected class; (ii) she was performing her job satisfactorily; (iii) she was subject to an adverse employment action; and (iv) similarly situated individuals outside of her protected class were treated more favorably. *See*, generally, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

**Race Discrimination**

In the instant case, on May 25, 2004, while on a business trip, Plaintiff's supervisor, Thayer Broili a white male, learned Plaintiff is Native American. When he learned this, the Plaintiff, sitting

- 6 -

directly across from him, saw him glare at her angrily and searchingly for a couple of minutes. Plaintiff does not look like a 'stereotypical' Native American. Several times through the evening and the next day Plaintiff noticed her supervisor staring at her. It was at this point that the previously friendly working relationship she enjoyed with her supervisor ended. Mr. Broili spoke to others in the group for the remainder of training and on the return trip but refused to say a word to Plaintiff. (SSOF ¶¶48-54).

Further, during a staff meeting on May 31, 2004, Plaintiff heard her supervisor say: "Those damn Indians, always causing trouble and wanting something for nuthin," or words to that effect, while he stared angrily at Plaintiff. Mr. Broili's behavior toward her was racist. Plaintiff felt threatened and demeaned by Mr. Broili's actions and comments. (SSOF ¶53).

On June 15, 2004, Plaintiff sent her team leader, Rex Wahl (white male) an email asking a question concerning project work. Mr. Wahl returned an email to Plaintiff not with an answer to her question but with the pejorative phrase: "So many chiefs, just one indian [sic]." (SSOF ¶64).

Plaintiff was shocked and insulted to see this, especially to see what she feels is an intentionally disrespectful and diminutive lower case 'i' instead of a capital 'I' as would be appropriate when describing a race of people. When Plaintiff asked what Wahl meant by his statement, he responded "if the shoe fits," made an odd face at her, turned his back and walked away. Plaintiff told Mr. Wahl she didn't like what he had said. Plaintiff felt threatened and intimidated by Wahl's email and his attitude toward her. Plaintiff did not feel it was innocent or unintentional and represented a racial and hostile act against her. (SSOF ¶64).

Both Mr. Broili's oral statement and Mr. Wahl's email constitute racial slurs which betray their bias against Native Americans. There is no evidence that either Mr. Broili or Mr. Wahl made similar racist remarks about any non-Native American employee of the Yuma Area Office.

Plaintiff, as a Native American, was singled out and subject to oral and written racial slurs by her supervisors. She was also excluded from conversations, ignored and glared at by her managers and subject to greater scrutiny than other employees. Such constitutes racial discrimination and harassment in violation of Title VII. *See Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993); *Snell v. Suffolk County*, 782 F.2d 1094 (2nd Cir. 1986); *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971).

### **Gender Discrimination**

At the time Plaintiff began working in the environmental group, which was comprised of two teams, she was the only female with two male coworkers on her team. The environmental group was situated in a large room with open cubicles for each individual. Plaintiff was assigned by senior management to manage a high-priority program/project known as Salvinia. One of the male coworkers, Rex Wahl, was assigned to provide her his technical expertise for the Agency's acquisition of a permit and was told this was a high-priority project. (SSOF ¶¶32-43).

Shortly after beginning her employment Plaintiff began to notice and experience a pattern of treatment from Mr. Wahl different from the way he interacted with other employees that, over time, became obvious to Plaintiff he was treating her with gender discrimination: assisting the male in the group while refusing Plaintiff's requests; withholding necessary information from Plaintiff; making comments like: " women, like my ex-wife, don't belong in some career fields." or words to that effect; assigning numerous lower level work tasks to Plaintiff; accusations of inferior work and incapable of directing her work; stating that: she reminded him of his ex-wife; removing Plaintiff from meetings; threatening Plaintiff with removal of hours and a poor performance evaluation; and keeping notes recording and criticizing Plaintiff's movements and actions. Wahl did not record or criticize the movements or actions of any males. Plaintiff observed that Wahl

never treated any males in the environmental group or in any other groups in this manner, or made any complaints to management about any males. (SSOF ¶¶56-59). Wahl also made efforts to exclude Ms. Riley from office social functions. (SSOF ¶94).

On several occasions Plaintiff observed Wahl staring at her breasts and watching her as she walked. Plaintiff was compelled to cross her arms over her upper torso and turn sideways to avoid being ogled in this way. Plaintiff observed Wahl stare at other women's breasts and watch them as they walked. Plaintiff heard Wahl make sexist comments about women in the workplace, which is supported by her witness's statement. Wahl created a sexually charged and stressful workplace for Plaintiff through his constant overt and covert comments and actions toward women. (SSOF ¶¶66, 84, 107-109).

The actions of Plaintiff's supervisor and team lead and the many examples presented, including the removal of her duties represents pervasive and severe discrimination against her that resulted in a hostile workplace causing her to suffer mental, emotional, and professional harm. That the discrimination was severe and pervasive is corroborated by witness testimony. (SSOF ¶63).

At the time Plaintiff was subject to harassing and discriminatory behavior, by her male supervisor and team lead, she was performing her duties satisfactorily. Defendant has produced no evidence during this litigation, such as counseling statements or performance evaluations, to support a contention that Plaintiff was not performing her duties in a satisfactory manner. In fact, the testimony of Defense witnesses: Hoeft, Broili, and Wahl all confirmed that Plaintiff did succeed in the performance of the work she was assigned to complete. Her completion of the Aquatic Pesticide Application Plan was satisfactory and subsequent to this, her Agency was issued the National Pollutant Discharge Elimination System permit by the state of California that was the primary goal of her Agency assigning her to the position of Salvinia Program Manager. Despite

this, Plaintiff's duty assignments were removed from her and she was placed under the strict supervision of Mr. Wahl.

Neither Broili not Wahl ever treated any males in the environmental group or in any other groups in the same manner in which she was treated. Unlike Ms. Riley, male employees were allowed to speak freely at meetings. Unlike Ms. Riley, Julian DeSantiago, a male employee, was allowed to take leave without having to fill out a request form and forward it to Messrs. Wahl and Broili. Unlike Ms. Riley, no male employee was stripped of his duties and responsibilities. Mr. Wahl did not stare inappropriately at other male employees or make vulgar comments about their physiology. That treatment was saved for Ms. Riley.

### **Evidence of a Hostile Environment Exists.**

The elements that comprise a claim of hostile environment require that: (1) the Complainant is a member of a protected class; (2) the Complainant was subject to unwelcome harassment; (3) the harassment was based upon the Complainant's gender; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action. *Faragher v. City of Boca Raton*, 524 U.S. 775, 141 L.Ed.2d 662, 118 S.Ct. 2275 (1998); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998). In general, "hostile environment" harassment exists where workplace conduct creates an intimidating or hostile working environment without resulting in any tangible loss of job position or benefits. See *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986).

As described above, Ms. Riley was subject to continuous, pervasive harassment and hostility. She was subject to racist and misogynistic comments. She was leered at by her team lead,

yelled at by her supervisor, excluded from work discussions, excluded from social functions, ridiculed and stripped of her job responsibilities. Such is a violation of Title VII.

### **Evidence of Reprisal Exists**

There are three essential elements of a retaliation claim: (1) a Complainant engaged in protected activity by opposing discrimination or participating in the statutory complaint process; (2) the Complainant was subject to an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. EEOC Compliance Manual, Volume II (BNA) §§ 8-II (A) (1998). The most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge. Other types of adverse actions include threats, reprimands, negative evaluations, harassment, or other adverse treatment. EEOC Compliance Manual, Volume II (BNA) §§ 8-II (D)(1) (1998)(emphasis added).

The statutory retaliation clauses prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity. Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity. More significant retaliatory treatment, however, can be challenged regardless of the level of harm. As the Ninth Circuit has stated, the degree of harm suffered by the individual "goes to the issue of damages, not liability." *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997).

The retaliation provisions of the anti-discrimination laws set no qualifiers on the term "to discriminate," and therefore prohibit any discrimination that is reasonably likely to deter protected activity. *See*, e.g., *Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) ("[t]here is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint"); Passer v. American Chemical

Society, 935 F.2d 322, 331 (D.C. Cir. 1991) (Section 704(a) broadly prohibits an employer from discriminating against its employees in any way for engaging in protected activity and does not "limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion"). They do not restrict the actions that can be challenged to those that affect the terms and conditions of employment.

Thus, a violation will be found if an employer retaliates against a worker for engaging in protected activity through threats, harassment in or out of the workplace, or any other adverse treatment that is reasonably likely to deter protected activity by that individual or other employees. This broad view of coverage accords with the primary purpose of the anti-retaliation provisions, which is to "[m]aintain unfettered access to statutory remedial mechanisms." Regardless of the degree or quality of harm to the particular complainant, retaliation harms the public interest by deterring others from filing a charge. An interpretation of Title VII that permits some forms of retaliation to go unpunished would undermine the effectiveness of the EEO statutes and conflict with the language and purpose of the anti-retaliation provisions. EEOC Compliance Manual, Volume II (BNA) §§ 8-II (D)(3)(citations omitted).

An initial inference of retaliation arises where there is proof that the protected activity and the adverse action were related. Typically, the link is demonstrated by evidence that: (1) the adverse action occurred shortly after the protected activity, and (2) the person who undertook the adverse action was aware of the complainant's protected activity before taking the action. EEOC Compliance Manual, Volume II (BNA) §§ 8-II (E)(2).

On July 20, 2004, Ms. Riley contacted an EEO counselor of her Agency lodging an EEO complaint alleging sex, gender, and race discrimination, and hostile workplace against Thayer Broili, supervisor and Rex Wahl, team leader. On July 22, 2004, Broili and Wahl learned of Ms.

Riley's complaints. Within a few hours of learning Plaintiff had lodged her EEO complaints, she was ordered to turn over all her assigned project's electronic files, after which Plaintiff received an email from her supervisor stating that he had removed her from her assigned project and discretionary duties turning it over to team leader Wahl to have complete oversight and direction of all Plaintiff's work effective immediately. The removal of Plaintiff's discretionary duties and subsequent placement of all of Plaintiff's duties under the direction of the male coworker against whom she was alleging discrimination and harassment, constituted an adverse employment action. (SSOF ¶¶76-83)

In addition, the agency breached its settlement agreement with Ms. Riley by continuing to allow Mr. Wahl to supervise her and assign her work during the 60 day "cooling off" period. Further, during that period, Mr. Wahl ordered Ms. Riley to perform a field assignment, despite the fact that the agency was aware that she was scheduled to undergo shoulder surgery stemming from a prior work-related injury. Ms. Riley slipped and fell performing that field assignment injuring her other shoulder and aggravating her pre-existing injury. (SSOF ¶¶101-123)

In addition, during an office holiday party, Mr. Wahl punched the back of Ms. Riley's chair and called her a "bitch." (SSOF ¶124). Further, just a few months after Ms. Riley alleged that the agency had breached its settlement agreement with her, she was terminated. During his deposition, Ms. Riley's supervisor, Thayer Broili, who made the recommendation that Ms. Riley be terminated, admitted that her prior EEO activity was a motivating factor in his decision to recommend that she be removed from federal service. (SSOF ¶154).

**Plaintiff's Claims Are Not Barred By Federal Employees Compensation Act ("FECA")**

Defendant's argument that Ms. Riley's EEO claims are barred by FECA is misplaced. Several courts have held that FECA does not bar federal employees from suing their employers

under the anti-discrimination laws. *See*, e.g., *Miller v. Bolger*, 802 F.2d 660 (3d Cir. 1986) (Title VII claim not barred by FECA); *Callanan v. Runyun*, 903 F. Supp. 1285, 1296 (D. Minn. 1994) (Postal Service employee not precluded by FECA from suing under Title VII), aff'd on other grounds, 75 F.3d 1293 (8th Cir. 1996); *Sullivan v. U.S.*, 428 F.Supp. 79 (E.D. Wis. 1977)*; Dubee v. Henderson*, 56 F. Supp. 2d 430 (D. Vt. 1999)(Postal employee was sexually harassed by a coworker. She began receiving OWCP benefits for the stress, then sued for sex harassment under Title VII and disability discrimination under the Rehab Act. US argued that FECA was the exclusive remedy. Court held discrimination falls outside the parameters of workers' compensation). Similarly, in *Nichols v. Frank*, 42 F.3d 503, 515 (9th Cir. 1994), the plaintiff alleged sexual harassment that caused several injuries. Among those injuries was post-traumatic stress, which entitled her to FECA benefits. The Ninth Circuit concluded that FECA did not bar the plaintiff's recovery under Title VII for her other injuries.

The law in this area is clear. Plaintiff's claims under the Title VII, are not barred by FECA. This Court, therefore, does have jurisdiction to decide this matter. Defendant's argument fails.

**CONCLUSION**

For the above stated reasons, Defendants motion for summary judgment should be denied.

RESPECTFULLY SUBMITTED this 7th day of March, 2008.

LAW OFFICE OF JAMES BURR SHIELDS


\_\_\_s/ John A. Conley_____
John A. Conley
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of March, 2008, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jill L. Hirneisen

Assistant U.S. Attorney

40 North Central Avenue

Suite 1200

Phoenix, Arizona 85004-4408

Attorney for Defendant

jill.hirneisen@usdoj.gov

              ____s/ John A. Conley_____