ATTACHMENT "2"

09-04-2006 05:28   C. RILEY 528-329-6100                                                    PAGE8

# Cheryl J. Riley

509-307-3534

12550 E. 34th Street ◊ Yuma, Arizona 85367

August 30, 2004

Tess Yiamarelos
Bureau of Reclamation                                    Provided By Electronic Mail
Lower Colorado Regional Office
P.O. Box 61470
Boulder City, NV 89006-1470

Dear Ms. Yiamarelos:

The following is some background information and a date log to assist with understanding the Current workplace situation and the timeline in which incidents occurred for which I filed my EEO complaint.

On April 26, 2004, I began working in the Resource Management Office (RMO) within the Yuma Area Office (YAO). On that day, Cindy Hoeft (RMO Director) appointed me to the position of program manager for the Integrated Pest Management Invasive Species – Salvinia Project. She described to me what my duties would be and that I was to take charge of the entire project. Cindy stated that it was my responsibility to complete the necessary permit and monitoring plan, others would be available to help me and I was welcome to ask for any help I needed, but I was ultimately responsible for getting the document done as fast as possible. In addition, I would be working with the Salvinia Task Force on the Steering Committee and eventually would take over our office's lead position to the Task Force but she would stay involved for a while as I came up to speed. I was to do this as fast as possible and could work all the hours necessary to get the job done. Whatever I needed was fine with her; this project was the highest priority, nothing else was to get in the way. She also told me I would be working on the Multi-Species Conservation Program (MSCP) but this could wait until after the salvinia was handled, and she wasn't sure yet to what degree that would be.

Both Cindy and Thayer Broili, my first line supervisor, announced openly and in staff meetings that I was the Program Manager and Project Lead on the Salvinia project. I was told I would be receiving training in program management. Jim Cherry, Area Manager, stopped me in the hallway to personally thank me for coming to work at YAO and taking over this project, he assured me I had full support behind me. Thayer stated at the group staff meeting that I was in charge of the Integrated Pest Management Program, specifically to work on the Salvinia Project but would also be working on the MSCP and other projects later. I was assigned to be in charge of all aspects of the program including writing the Aquatic Pesticide Application Plan (APAP) with Monitoring Plan, working with Task Force committee members, Denver Technical Services team, and other agencies. Thayer also gave me permission to work as many hours as needed to get the job done, it was entirely up to me. Two days later, Thayer called a quick meeting and assigned Rex Wahl and the on-site contractor, Kim Maloney, to provide me with any support I needed, he stated "Cheryl's in charge of this program you're both assigned to help her with whatever she needs, and help her get familiar with salvinia." This is how I understood my position and duties so I proceeded to perform accordingly: organizing and facilitating meetings, mediating differences of opinion, participating in a river boat tour, attending a

Riley 0039

legal hearing in Sacramento, getting involved with Task Force members, researching the project, training in Resource Plan database management, and becoming familiar with my new office.

I feel that from the beginning or shortly after I started Thayer wanted me (a woman) out of the program manager position and Rex (a man) put in my place. He made it clear he would speak with the men but not the women. To this end I was provided little, slow, or no help on the project; withheld information; yelled at, ridiculed and demeaned; given conflicting orders; disparate treatment; and set up to fail.

The derogatory remarks and yelling caused me to be ill on many occasions.

From here I will provide date log info on interactions with Thayer. I will do a separate date log concerning interactions with Rex to avoid redundancy.

Date Log - Thayer

| | |
|---|---|
| April 26: | Reported to new duty assignment YAO. Cindy assigned me to be Program Manager/Project Lead of IPM-Salvinia Project. Thayer assigned me to be Program Manager/Project Lead of IPM-Salvinia Project. Cindy also told me that I would be in charge of the resource plan and budget for the IPM as well. At staff meeting Thayer announced to staff my position as PM and also that I would be in charge of MSCP but not until the salvinia NPDES permit was completed. I would also support NEPA projects but after salvinia, salvinia was first and my highest priority. |
| April 27: | Thayer discussed with me again in his office that my priority was the salvinia project and told me to work whatever and how many hours I wanted to get the job done. |
| | Later, Cindy also told me that I could work any hours I felt were necessary to get up to speed on the salvinia. She also told me that I would be the YAO person responsible for any MSCP projects or work, that right now Region did most of it but some work is needed here. |
| April 28: | Thayer turned over MSCP data to me. He said "it's all yours now, when you get a chance look it over, or when you want to take a break from salvinia." |
| May 3: | In staff mtg Thayer told group I am assigned the manger duties of IPM program. I asked about our PPF's. Thayer said he'd check into whether they're necessary. |
| May 10: | In staff mtg Thayer made disparaging innuendos to group about Dave Sisneros and Denise Hosler with Denver Technical Services. |
| May 12: | I attended Irrigation District meeting in Blythe, CA with Don Young from YAO. Mtg included BLM, FWS, NWR. |
| May 19-21: | Cindy sent me to Sacramento from Las Vegas to attend the CA State Water Resources Control Board NPDES hearing. Thayer was aware I was sent. |

May 21p.m:    Thayer uninterested in what I had to say, and avoids speaking to me.

May 24:    I stopped by Thayer's office to ask him some questions about salvinia. He nearly shouted at me "I don't know anything about salvinia, and I don't want to know," refused to help.

May 31:    Staff mtg. Thayer said he would be at the Dike 4 Project mtg in Coachella with Cindy next day. He said . . ."those . . . Indians are always causing trouble and wanting something for nothing."

June 2:    I told Thayer that Cindy had told me to review and comment on the Salvinia Environmental Assessment. Thayer told me "no, you don't touch it."

Thayer assigned me to work with Julian on Telegraph Pass project.

Thayer made disparaging comments to environmental group in our work area, saying . . ."those people upstairs don't know anything, and they don't know how to do anything right, especially John Nickell, you can't get anything right out of them."

June 7:    I stopped by Thayer's office to ask if everything was going okay? He said "you're doing great, we're real happy with your work and happy you came here, just keep doing as you're doing."

During p.m. staff meeting Thayer said Rex would be team lead for NEPA group to help him with organizing projects. During this meeting Thayer acted as though I wasn't there, he seemed to forget that he had assigned me the IPM program, he avoided looking at me, interrupted me when I did talk but let Rex, Ron, and Julian speak freely. The contractor reminded him he had assigned me as IPM lead. Later I learned he gave the IPM letter to Ron Curiel (hazmat lead) to handle.

June 15:    During staff mtg Thayer made nasty remarks about John Nickell not being competent and causing problems for our group. Rex thought it was funny, and agreed, Kim laughed. It makes me sick to hear this kind of talk.

June 22:    During staff mtg Thayer made derogatory comments about safety officer Al Jernigan to group.

In afternoon I was at Thayer's office, Rex and Kim were there. Thayer asked how the APAP was going? I said good, I was working at doing a thorough job. Thayer said, "Thorough job?" "You don't have to do a thorough job, nothing Reclamation does here or sends out the door is thorough." "Those people in the front office, Jim Cherry and Mike Collins, wouldn't know something thorough if they saw it." (loud sneering voice). This made me so angry, I was sick to my stomach for the rest of the day. I was fed up with the nasty ugly remarks being said constantly about my coworkers and upper management folks who I liked and respected or didn't even know.

June 28:    Cindy told me she wanted me to take over managing the Resource Plan and database for the Invasive Species-Salvinia. Said she would tell Thayer. Cindy

Riley 0041

trained me on the budget and instructed me to get with budget dept and Christa to learn it.

I stopped by Thayer to tell him sometimes I got instructions from Cindy but wasn't sure if he knew. I asked him if it was ok for me to email him to keep him in the loop. He said that would be ok. He again said I was doing a great job.

June 29:  Thayer confirmed and assigned me to take over the Resource Plan database and budget for Invasive Species. I trained with Christa 6 hrs. Thayer emailed the budget office to have me named POC on database and to give me database access.

June 30:  Thayer called me to his office to talk about my hours with Rex present. During this time I was questioned about my hours with Rex and Thayer exchanging comments about me to each other ridiculing my having worked the hours I had and expressing doubts of my having worked the hours. They performed this discussion with each other as if I wasn't there. Thayer then directed his attention toward me and proceeded to infer three times that I was cheating on my hours. I said that I had only been following his and Cindy's orders. I offered to provide him with a log describing my work. I also requested that if his directions to me had changed I needed to be told ahead of time and didn't like what was being inferred. Thayer also told me "I'm taking over the Salvinia database and resource plan, you don't have anything to do with it anymore!" He ordered me to see Cindy the next day. When I left his office I was very upset, Christa saw something was wrong and I told her he was accusing me of cheating on my hours.

July 1:  On Wed I met with Cindy. I told her how demeaning Thayer and Rex had been toward me. I told her that Thayer bullies me often. Cindy asked about my hours and if I felt okay it was okay with her what hours I felt needed to be worked, it was up to me. She didn't respond to my telling her about the bullying.

July 2:  I didn't feel I had been as clear to Cindy as I could have and stepped in to see her. I told her again how Thayer was browbeating and bullying me and that he and Rex both were withholding help and information when I asked for guidance on the Salvinia permit. I also told her about him saying derogatory remarks about coworkers; I named John Nickell, Jim Cherry, and Mike Collins as being a few targets. She really didn't say much, changing the subject to the Resource Plan and budget work.

July 8:  I attended the Salvinia Task Force Steering Committee mtg with Cindy and Don Young. BLM, FWS, IBWC, CA Water Board, and others were present. I was scheduled to speak on the status of the APAP.

July 9:  Meeting 0900: Cindy, Thayer, Rex, Kim (contractor), and me. (This was the first I heard of the Draft APAP I'd written and sent out for edits and comments) Thayer opened the meeting by ruffling through a copy and saying "Cheryl obviously doesn't know anything about writing a permit!" (In fact I had told him specifically that I didn't, I never had, and was why I had asked him and Rex both for help during the past 6 weeks). There were comments by Rex and the contractor and discussion between them, Cindy, and Thayer. I was ordered to

work all weekend to get changes done.  Cindy did not look at me once during the mtg.

p.m: I emailed Cindy with CC to Thayer a request from BLM for e-copy of a draft doc.  Cindy was gone for the p.m. but I stopped by Thayer to check on sending.  All of a sudden Thayer blew up at me. He jumped up part way waving his arm and screaming at me "I'm your boss and Rex is your boss, Cindy's not your boss!" "You don't e-mail Cindy anymore!" "And you don't e-mail BLM anymore either." (I was shaking and very sick after this).

July 12:        I was afraid to go near him so I sent Thayer an email telling him to never yell at me again.  I also asked what he wanted me to do about Cindy's emails and the people who emailed me about the resource plan. He did not answer me.  Cindy called me into her office while Thayer was there (he had taken my email to her) and she apologized to me for putting me in the middle of getting conflicting orders. (She did not address his yelling at me).  Cindy also explained again how important the GPRA goals are.

July 13:        Cindy left on vacation for two weeks to return 7/28.

July 15, 10:00: I set up the conference call with LCR, BLM, FWS, Denver Tech Svcs, and CA Region-7 as directed by Cindy at the Steering Com mtg.  During call, Thayer made a statement to the entire calling group that "I'm Cheryl's supervisor and no one is to give her any orders to do any work but me." No one had.  He said it again in a few different words.  It was received with silence. Very embarrassing! One of the group told Thayer, "no one is trying to tell Cheryl to do work." I rec'd phone calls later to sympathize and express concern for me at how he treated me.

During this phone call the decision by the group, including Thayer, was for Dave Sisneros and me to do some phone talking to work out the sampling plan for the permit.  Right after we hung up Thayer yelled at me that I was not to have anything contact with Theresa Olson (LC Region biologist), and I wasn't to email anyone any information on the APAP.  Rex told me I was not to have any conversation with anyone from FWS without his knowledge and permission.  I asked him to send me that order in writing.

p.m.            Thayer followed me outside when I made a phone call on my cell phone.  When I tried to reenter the building, he stopped me and told me to go sit down to talk.  Thayer remained standing over me and pacing.  (I was very nervous and afraid as Thayer started to raise his voice at me so when Terry Staggs came out and stood by us I was relieved to not be alone.)  Thayer ordered me to not work with Dave Sisneros, that the APAP would be by us only.  I was to have nothing to do with Denver people or Theresa Olson as he said "they are just trying to get more money out of us."

July 16:        At Thayer's office, Thayer told Rex, Kim (the contractor), and me that "GPRA doesn't mean anything to us!" "Theresa Olson just got me in trouble, but you're not to pay any attention to GPRA." "GPRA is just somebody up there's idea to make it look like they're doing something when they're not doing anything. It's only to make his bosses think he's busy." "You just ignore it, it doesn't have anything to do with you."

09-04-2006 05:30    C. RILEY 928-329-6100                                      PAGE13

(This was totally conflicting as last week Cindy had told me how important GPRA was and this project being a high priority No. 2 on the list and Thayer was there when she said it. Cindy also sent an email to both Thayer and me saying how important GPRA is to our success).

July 19:        Thayer was standing in the hallway by the contractor's work area talking to her. As I approached I heard them discussing salvinia so I stopped to be included in the permit discussion. Thayer frowned, waved his arm at me and said very loudly for all to hear "keep going, I don't want you here!"

               I emailed Janel Potuchek about filing an EEO claim. Janel referred me to Tess Yiamarelos.

July 20 a.m.:   I contacted EEO Counselor, Tess Yiamarelos, and told her of some of the problems I was experiencing and asked for instructions on what to do to file a complaint. Tess outlined the req.s for me.

July 20 p.m:    Thayer called a meeting in his office with Rex, Kim, and me. Thayer asked me where I was at with the APAP. I told him I was having the GIS office make the map with the coordinates as required by CA. Thayer said, "You won't get anything out of them for 2 or 3 weeks, they can't do anything up there." Rex and Kim laughed. Thayer said, "Take a black pen and mark an X on a map and send it in." He looked at Kim and Rex and they laughed with him. I said, "CA requires the coordinates of the treatment areas, Terry said he'd have the map by COB tomorrow, so it will be ready when the APAP is completed." He glared at me and said, "I'm ordering you to draw an X on a map." He turned to Kim and Rex and they started laughing again. I asked him "are you telling me, a federal employee, to draw an X in ink on a map and submit it to a state agency as a document from the United States Government?" No reply. Rex, Kim, and Thayer started talking their contracting days and how contractors do things better. Thayer said, "It's about time contractors got into government, to show government how things are supposed to be done." I'd had enough so got up to leave, Thayer said he wanted the APAP completed by noon on Thursday 7/22 and given to him for his review. We'd need it done no later than that to get Jim's signature.

When I walked out of this meeting I went to Jack Simes' office, who I thought was 'acting' for Cindy. He walked me to Mike Collins office. I told Mike about the problems. I also told him I had spoken with an EEO counselor and would be filing a complaint. He asked and I gave him permission to tell Cindy. He said he would be calling Cindy that afternoon or the next day.

July 22:        Cindy called me at approx 10:00. I told her about the problems: Thayer's verbally abusing and threatening behavior, denigrating and demeaning coworkers (I named them) and myself, ridiculing GPRA, conflicting orders, barring me from working with or contacting others, no help with APAP, etc. I also told her I had spoken with Tess from EEO and would be filing an EEO complaint and I was asking for a reassignment, I couldn't work for Thayer. Cindy said she would speak with Thayer shortly.

At 11:00 I noticed Thayer's door was closed, I let him know by email I had completed the APAP and would be avail to do any changes and prepare the cover ltr and mailing. I delivered it to him with attachments at 11:15. At 1:30 he emailed me to give an e-copy of the APAP to him, Kim Maloney, and Rex.

I passed Kim Maloney's work area and saw the APAP on her screen; she was making changes.

At 2:44 I rec'd an email from Thayer with a "Punch List" attachment of salvinia work items he was taking over.

Thayer's door was still closed and he hadn't got back to me by 3:45 so I emailed him that I would complete the processing of the APAP.

He emailed back at 4:25 that changes would need to be made but I wasn't needed for this.

July 23   I answered Thayer's email asking that he allow me to be involved with changes to the APAP. He answered with an email saying no.

I received an email from Thayer stating that all of my work was now turned over to Rex for his oversight and direction. (Effectively my position as program manager was removed and turned over to Rex).

I saw Rex meet with Kim Maloney.

I watched Kim print out the APAP, add the attachments, and take to admin staff giving them instructions to get final signature and mailing.

July 29   5:30 Meet w/Cindy. She said she'd set up a meeting with a neutral third party present.

July 30:   0900 Cindy called a Salvinia meeting with her, Rex, Thayer, and myself. After project discussion, Cindy turned the conversation to my EEO complaint issues. I was completely intimidated. Thayer glared at me with cold hatred, Rex accused me of deficient work. Cindy gave every appearance of agreeing with the men and accepting what they said without my feeling I could respond appropriately. No neutral third party was present.

**ATTACHMENT "3"**

# RESOLUTION AGREEMENT

## UNITED STATES DEPARTMENT OF THE INTERIOR

| | |
|---|---|
| *Cheryl Riley* | ) |
| v. | ) |
| | ) |
| | ) |
| **U.S. Department of the Interior** | ) |
| **Bureau of Reclamation** | ) |

## RESOLUTION AGREEMENT

In accordance with the terms set forth herein below, the parties hereby agree to resolve the above-captioned complaint of discrimination.

By executing this Resolution Agreement the parties hereby agree to resolve all of the issues raised in Cheryl Riley's (hereinafter, the Complainant) informal complaint of discrimination, including all claims of monetary reimbursement, and any other claims for relief, whether referenced herein or not, whether known or unknown, and all other personnel claims which have been filed or could have been filed by her against the U.S. Department of the Interior or any of its Bureaus and Offices (hereinafter, the Agency) through the date of execution of this Resolution Agreement.

The Complainant alleged she was discriminated against on the bases of sex (female) and hostile work environment.

The issues alleged in the complaint and resolved by the Resolution Agreement are as follows:

1. Complainant was subjected to demeaning, unprofessional behavior (yelling, threatening, intimidating) on the part of Rex Wahl, Team Leader and Thayer Broili, Supervisor. Men in the group are treated differently.
2. Complainant was publicly criticized or ridiculed by both Team Leader and Supervisor.
3. Assignments involving decision-making and/or status were taken away from Complainant.
4. Complainant's input was not valued or wanted. Input was solicited from the men in the group.
5. Complainant was instructed by Supervisor to limit email communications within the group and send no email to the Director.
6. On several occasions, Team Leader denied training or involvement with outside groups to Complainant.

**Riley 0083**

The parties mutually agree to the following terms and further agree that these terms shall fully and forever resolve Complainant's allegations of discrimination against the Agency, and that except as specified herein, no other promises, conditions or obligations are made or imposed on the parties:

1.  By executing this Resolution Agreement, Complainant withdraws and dismisses, with prejudice, her informal complaint of discrimination, and any other allegation, complaint, grievance, or other action she has filed or could have filed and agrees not to institute, file or otherwise initiate or cause to be instituted, filed or initiated on her behalf, any complaint or other action, including civil court litigation, against the Agency, its bureaus, offices, agents or employees which has or could have been filed by her through the date of execution of this Resolution Agreement.

2.  The Complainant understands and agrees that she will receive no relief or other consideration beyond that recited in this Resolution Agreement, and that her acceptance of this shall be final and conclusive.

3.  The Complainant shall bear her own costs including attorney's fees relating to this matter.

4.  Complainant will be responsible for all taxes (as applicable) that may be due as result of this agreement. This would include any and all appropriate normal deductions that are typical for pay.

5.  No compensatory damages will be paid to the complainant.

6.  The failure or unenforceability of one portion of this agreement does not affect the enforceability of the remainder of the agreement.

ACCORDINGLY, THE AGENCY AGREES TO:

1.  Detail the Complainant, from her current position, Natural Resource Specialist, GS-0401-09/01, to the HAZMAT Team, under Ron Curiel, Team Leader, for a 60-day period, beginning October 11, 2004, to allow the parties a cooling-off period.

2.  Supervisor Thayer Broili and Team Leader Ron Curiel will discuss with the Complainant her role and responsibilities on the HAZMAT Team, while on detail, within the week of October 11, 2004.

3.  Supervisor Thayer Broili will develop an individual development plan for the Complainant for her current position of Natural Resource Specialist, GS-0401-09/01 within 60 days of the execution of this agreement.

Riley 0084

4.   To improve communication, the Complainant and Supervisor Thayer Broili will meet weekly for a period of at least six months, unless either party is on leave, travel, or involved in work exigency/emergencies.

5.   Provide team-building training for the Environmental and HAZMAT Group of the Resource Management Office, beginning November 2004.

That this Resolution Agreement shall not constitute or be construed as an admission of liability or wrongdoing by the Agency, but is for the purpose of resolving disputed claims. Upon compliance and or payment of the items and or amounts set forth in this Resolution Agreement, Complainant waives and releases the agency in full from any claims or causes of action for back pay, damages, interest or attorney's fees, which she raised or could have raised through the date of this Resolution Agreement.

That the parties agree to this Resolution Agreement warrant that they have not assigned or transferred any of the claims released herein to other persons, parties or entities.

That the parties agree that should the Agency fail to honor its obligations as set forth in this Resolution Agreement, 29 CFR 1614.504 shall govern. If the Complainant believes that the agency has failed to comply with the terms of a settlement agreement or final decision, the Complainant shall notify the Director, Office for Equal Opportunity, Office of the Secretary in writing, of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. The Complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased. If this complaint is reinstated, the Complainant understands that the parties return to a status quo ante.

That this Resolution Agreement contains the complete understanding between the parties. The parties have no other oral or written agreements or understandings. That this Resolution Agreement is entered into voluntarily and with full understanding of its terms.

In consideration of the foregoing, the Parties knowingly and voluntarily settle the complaint by signing and dating this Resolution Agreement, below:


_____          _10/07/04_
Cheryl Riley, Complainant                          Date


_____          _10/7/04_
Cynthia Hoeft, Resource Management          Date
Office Director, Yuma Area Office

Riley 0085

# REQUEST FOR PERSONNEL ACTION

**RT A - Requesting Office** (Also complete Part B, Items 1, 7-22, 32, 33, 36 and 39.)

| | 2. Request Number |
|---|---|
| CAIL OF AN EMPLOYEE | 041450130 |
| | 4. Proposed Effective Date |
| JISSA SPARLIN        (928) 343-8120 | 10/10/04 |

8. Action Authorized By:
MELISSA A. SPARLIN
10/08/04

**RT B - For Preparation of SF 50** (Use only codes in FPM Supplement 296-33.) Show all dates in month-date-year order.

LEY, CHERYL J.
2. Social Security Number: 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 | 3. Date of Birth 09/25/51 | 4. Effective Date 10/11/04

**ST ACTION** / **SECOND ACTION**

6-B. Nature Of Action: DETAIL NTE 12-09-04

| 8. Oux. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|
| 0401 | 09 | 01 | $ 40454 | PA |

36478 | $ 3976 | $ 40454 | $ 0

15. FROM: Position Title and Number
TURAL RESOURCE SPECIALIST
07210   0Y07860

16. TO: Position Title and Number
UNCLASSIFIED DUTIES
3407220   0000000

WER COLORADO REGION / LOWER COLORADO REGION
MA AREA OFFICE / YUMA AREA OFFICE
SOURCE MANAGEMENT OFFICE / RESOURCE MANAGEMENT OFFICE
VIRONMENTAL & HAZARDOUS MATERIALS G. / ENVIRONMENTAL & HAZARDOUS MATERIALS G
VIRONMENTAL TEAM / HAZARDOUS MATERIALS TEAM
YUMA, ARIZONA

BASIC ONLY

NOT APPLICABLE

FERS & FICA | 08/28/00 | F | FULL-TIME

-0620-027 | YUMA, YUMA, ARIZONA

91

**RT C - Reviews and Approvals** (Not to be used by requesting office.)

ECIALIST KATHERINE L. FOREM 10/15/04
ECIALIST LOURDES H. VELASQU 10/14/04

LOURDES H. VELASQUEZ
HUMAN RESOURCES SPECIALIST | 10/13/04

Riley 0086

## UNCLASSIFIED DUTIES

1. Continue as primary POC for the Salvinia project.

2. Be assigned CECs as required in support of Compliance Team Operations.

3. FTHL field monitoring.

4. APAP permit compliance monitoring and reporting requirements support.

5. A22 site APP permit compliance and site monitoring support.

6. Septic APP Permit compliance and site monitoring support.

7. Hazardous Waste Management Program support and assistance, as required.

8. Introduced to the range of functions performed in the HazMat Team and be expected to lend support and assistance as required, when available.

9. Other duties as required.

**ATTACHMENT "4"**

| | |
|---|---|
| **From:** | Cheryl Riley |
| **To:** | Yiamarelos, Tess |
| **Date:** | 11/22/2004 1:49:40 PM |
| **Subject:** | Break in Confidentiality |

Tess,

I'm just now getting back to you on the conversation we had about a week and a half ago re Rex discussing confidential information from the mediation with Kim Garvey. Cindy was gone for a few days and I was out sick so I didn't get a chance to speak with Cindy until just a few minutes ago.

I did inform her of the hours long conversation that occurred between Rex and Kim Garvey while they were traveling, and how Rex had divulged confidential information from the mediation and also using it out of context in an effort to incite anger in Kim against me. Also that "he vented" on how I am wrong about my opinions regarding endangered species, etc., and "talked himself hoarse" denigrating me to Kim.

Tess, I don't see how I can possibly go back to work under him as team leader. This is the kind of lack of integrity I have been talking about. I feel I have tried to get things calm but it is impossible when Rex is stirring the pot, creating bias and a hostile workplace for me to suffer in.

Considering that he did not abide by his promise to keep the mediation confidential and what he has done to worsen the situation, I don't want to return to his side and control. I want to make my reassignment permanent. Is it possible for me to be permanently assigned to Ron Curiel?

Cindy also said my SF-52 was done this way because personnel couldn't use my PD (but the PD actually references haz compliance) so left it blank as "Unclassified Duties." Cindy assured me that, as it was only temporary, it didn't mean that I no longer have a title - so not to worry. I'll fax it to you for your records.

I'd like to discuss further as to your thoughts on what is possible at this point. Can I move to Ron permanent, or maybe a totally different reassignment to someone else?

Thanks

Cheryl


Cheryl Riley
Natural Resource Specialist
U.S. Bureau of Reclamation
Yuma Area Office
7301 Calle Agua Salada
Yuma, AZ 85364
Mail Stop YAO - 7210
928-343-8286
Fax 928-343-8320
criley@lc.usbr.gov

**ATTACHMENT "5"**

Cheryl Riley - Breech of Confidentiality

| | |
|---|---|
| **From:** | Cheryl Riley |
| **To:** | Yiamarelos, Tess |
| **Date:** | 11/29/2004 2:50:27 PM |
| **Subject:** | Breech of Confidentiality |

Tess,

I know that you're not back in the office until tomorrow but I wanted to let you know that I spoke with Cindy on Wed 11/24 regarding Rex's breeching the mediation confidentiality agreement.

Though there was more this is basically what was discussed. I told her what had occurred and that I was very upset and angry that he would do this to me. I told her that he had purposely and maliciously repeated things I had said in a confidential mediation just to create a bad and hostile work environment for me and cause problems for me, and to specifically destroy my working relationship with Kim Garvey. And that he has done this also with others coworkers. According to Kim he spent hours degrading me and deriding my opinions to her and "talked himself hoarse" putting me down to her. I told Cindy that I had noticed a difference in how Kim speaks and acts toward me. And, although I did not express this to Cindy, it is clear to me that Kim has taken advantage of the situation to help her advance her own interests and career. I did tell Cindy that all career oriented natural resource work had been assigned to only Kim. I also told Cindy that Rex has ruined any possibility of me being able to achieve any of my career goals here in Natural Resource Management and that he has been persecuting me for 6 months now. Cindy stated she can't say if he did or did not do this but regardless has full confidence in him, relies on him, and fully supports him in everything he does in his work for the group. Cindy also started to blame me for him doing this making an excuse for him that I was to blame because of my having filed the EEO and another complaint against him because she confused Kim Garvey with Kim Maloney and she did a doubletake when I clarified it was Kim G. (I don't see how it would be right even if it was Kim M.) I told Cindy his actions make it clear to me that I cannot return to work under him as a team leader again as I would continue to be treated badly by him and I requested to be reassigned away from Rex permanently to Ron Curiel. . . . though elsewhere would be fine also, I'm open. Cindy had very little response and was unsure how to proceed or what to do. She asked me what I thought on if she should speak with Rex. I told her I didn't know what her responsibilities are but that I was waiting to hear from you on what this did to the resolution or other action needed. As it was the day before Thanksgiving, Cindy and I thought it would be better to wait til this week and after I hear from you. She said she would have time over the long weekend to think over reassigning me to Ron. She didn't seem opposed to it.

I've contacted an EEO attorney who informed me that Rex clearly committed a retaliatory action against me, causing deletorius effects for me having impacts to my career and work environment, and he breeched a contract.

I've counted out the days and understand that if I decide to file an new EEO complaint for what Rex did I will by 12/22. Please let me know if the 45-day rule also applies to filing for a breech of the previous mediation.

Also, would you please notify Jean, who mediated my informal EEO complaint, to **NOT** destroy any notes or information obtained during the three mediation sessions. And I would appreciate your giving me her phone number and address. Would you also send me copies of the signed confidentiality agreements.

Thanks

Cheryl


Cheryl Riley
Natural Resource Specialist
U.S. Bureau of Reclamation
Yuma Area Office

**Riley 0207**

Exhibit   2
Page  11  of  12

**ATTACHMENT "6"**

| From: | Cheryl Riley |
|---|---|
| To: | Yiamarelos, Tess |
| Date: | 12/14/2004 7:00:52 PM |
| Subject: | Status of Resolution |

Tess,

As I'm sure you are aware, Cindy presented to me a new resolution having wording in which, if I signed, I would completely and irrevocably exonerate all parties of all charges and complaints. For this I was being offered a permanent reassignment to Ron Curiel, with my job series, grade, and step levels yet to be determined as signified by the letter X (GS-XXXX-XX-XX), very much like signing a blank check. My signing this would effectively disclaim myself and all that I have suffered from the mistreatment I have been subjected to and experienced during the past 7 out of the 8 months I've worked here. It would also have allowed Rex to be considered blameless and suffer absolutely no consequences for all he has done to defame and hurt me and he would give up nothing and suffer no hardship while I, on the other hand, would essentially give up my career and all I've worked for. This was wholly unacceptable to me and I told Cindy I felt it was a situation of victimizing the victim and provided no accountability for Rex's past actions or any guarantees that he would stop harassing me. Clearly the mediation and resolution did not stop him and he has never owned up to his conduct. As I'm sure Cindy informed you, I refused to sign the document.

From the very beginning of my EEO complaint, I expressed repeatedly that my primary need was to get reassigned away from Rex and for management to make him stop harassing me and creating a hostile workplace for me. At the initial mediation with Cindy, she offered me permanent reassignment to work under the team leader of the EnvHaz side, Ron Curiel. When this reassignment was offered I wanted it very badly but out of concern for a co-worker, I asked what the effect would be on this co-worker and discovered this co-worker would be bumped to the EnvNEPA side of the group under the direction of Rex. At that time, as she had expressed to me on a couple of occasions that she too was afraid of Rex and how he would treat her, I didn't want to put her through any stress so I am the one who suggested the possibility of my doing a detail and resulted, which resulted in the resolution being formed with my reassignment to Ron for a 60 day detail period with what was supposed to have been no contact with Rex and no problems derived from contact with/from him.

As you know, that is not what occurred. The information may have been given to me by way of Ron but the orders to me and subsequent associated problems were all directed by Rex and put me in direct contact and conflict with Rex. His tactics again became problematic necessitating my being required to sit in a meeting with both Thayer, and Rex, and experience much of the same problems I had identified in my complaint and was trying to get away from: refusing to allow me to express my concerns or questions thoroughly, refusing to provide complete and accurate information to complete the work; thus ordering me to do the work his way without allowing me the opportunity to substantiate the information. All of this is what I was supposed to have been reassigned away from. As you recall, I contacted you on this situation at the time and objected that this was entirely unfair and not abiding by the resolution.

I tried to put the best step forward with the resolution in attempting to find a way to make things work out, it is Rex who has proven through his actions and behavior toward me during the resolution that the situation is not going to change. I am requesting, therefore, to go back to the original offer of the resolution and be permanently reassigned to Ron's team based on this having been the intent and offer presented to me initially as relief from the problems under which I filed my EEO complaint.

My physical and mental health has suffered severely from what Rex has put me through with all the stress and worry. Things are bad enough but, under the circumstances, returning me to work under Rex's direction could compound the existing problems and only make things even worse for me.

I would appreciate your response to me by email or letter.

Thank you

ATTACHMENT "7"

# Cheryl J. Riley    home: 928-329-7219   cell: 509-307-3534   work: 928-343-8286

1562 W. 15th Street ◊ Yuma, Arizona 85364

December 31, 2004

Director, Office of Equal Opportunity                **USPS CERTIFIED RETURN RECEIPT MAIL**
Secretary of the Interior
1849 C Street, NW, MS-MIB-5221
Washington, D.C. 20240

RE:     1) Retaliatory (Reprisal) Action by Management
        2) Breech of Settlement Agreement

Dear Director:

On December 7, 2004, I wrote your office a letter reporting to you that I had been subjected to retaliatory action and on-going hostile workplace behavior by one of the individuals I had filed an EEO complaint against in August 2004, in which I claimed gender bias and hostile workplace actions.  In October I agreed to mediation and signed a settlement agreement after completing the mediation process.  The individuals I filed against in my initial EEO complaint and who participated in the mediation were: Rex Wahl, Team Leader for the Env-NEPA team; Thayer Broili, Environmental Group Manager; and Cynthia (Cindy) Hoeft, Resource Management Office (RMO) Director. The Agreement was signed between myself and Ms. Hoeft on October 7, 2004, to begin on October 11 and for items to be completed by December 10, 2004 (copy attached).  All individuals involved are employees of the Bureau of Reclamation, Lower Colorado Region, Yuma Area Office located in Yuma, Arizona.

This letter is to file two complaints with you against Ms. Hoeft.  1) she also committed a retaliatory act against me and 2) she breeched the Settlement Agreement by not fulfilling requirements defined in the Agreement.

The retaliatory action by Ms. Hoeft occurred on December 7, 2004 she called me into her office where she informed me that she had questioned individuals and obtained confirmation of my complaint that Rex Wahl did in fact commit a retaliatory act against me with the direct purpose to create a hostile workplace against me.  At this time I requested to be permanently reassigned to work under the direction of Ron Curiel when the temporary detail expired on December 10, stating that Mr. Wahl had proved he could not abide by the agreement designed to resolve my EEO complaint against him.  Ms. Hoeft stated that she fully supported Rex and all he does, and relies on him for how work is done in the group.  She then handed me a new document titled Resolution Agreement saying if I wanted to be permanently assigned to Ron to sign this document.  The document required that I irrevocably release Reclamation and all employees and parties from any criminal, EEO, and/or civil claims by me now and future for any and all actions taken against me.  For this she would assign me permanently to Ron Curiel.  But  there was a catch.  By signing this document I would also agree that my position be changed from my current GS-0401-09-01 to "GS-XXXX-XX-XX."  I questioned about my title/job series and pay level being undefined.  Cindy said they would be filled in later when everything was sorted out.  I stated that there was no guarantee that she wouldn't classify me as a clerk GS-02, nothing guaranteed my position or pay!  She was silent.  I also told Cindy this resolution gave me no guarantee that Rex Wahl would stop victimizing and harassing me, and if I signed it would effectively give him the right to do whatever he wants to me and I would have forever signed away my right to object.  She gave me no response.

If I signed I would get the reassignment away from Rex Wahl but it was very clear I would have to agree to give up my job.  But if I didn't sign I would be returned to work under his direction - the very person who has been harassing me for months and causing serious problems for me in the workplace.  I feel that, in trying to coerce me

Riley 0239

into signing a document clearing Rex Wahl of all wrongdoing and by which I would in all respects sign away my position so that I could escape a tormentor, Ms. Hoeft committed an act of extortion, and thus an act of retaliation.

I could not do what was being requested so I refused to sign the resolution. She took the document out of my hand and refused to let me have a copy. On December 10, Ms. Hoeft ordered me to work under the direction of Rex Wahl beginning on December 13. I emailed the information and some questions to Tess Yiamarelos, but I believe Tess helped write the new resolution and she never responded to my email (copy attached).

I am also filing a complaint against Cynthia Hoeft for Breech of Settlement in that items agreed to in the Settlement Agreement were not fulfilled. These items involve No. 1; my reassignment to Ron Curiel, and No. 3; my IDP, as described in the Resolution, was not completed.

Resolution item No. 1:  At the time of settlement, my primary request for relief was for reassignment away from Rex Wahl to another team leader, Ron Curiel. This was because of Mr. Wahl's actions that I felt were gender biased toward me and his increasingly hostile behavior toward me. At the final session with Ms. Hoeft on October 7, 2004, she offered me permanent reassignment to Ron Curiel's team. As much as I wanted the reassignment, I was concerned for the well-being of a coworker whom I was told by Cindy would herself be moved to Rex's group due to my reassignment. Knowing she was afraid of Mr. Wahl, I requested if we could do a 60-day detail reassignment at this time instead of permanent so she wouldn't be moved. I made it clear that this was with the stipulation to see if Rex could change his behavior and stop harassing me. I also stated that I wanted to be completely away from Mr. Wahl during the 60 days. Ms. Hoeft agreed to this, so I signed the Resolution Agreement with Cindy Hoeft. It was not adhered to. I was ordered to continue working on a project under the direction of Mr. Wahl with my experiencing the same problems. I complained to my supervisor and the EEO counselor that I was not getting the 60 days as promised.

Resolution item No. 3: One of the relief items I requested was reinstatement of the training I had been promised at the time I was hired that Rex had since disallowed. It was agreed that this would be included during the formulation of my IDP, which I would be able to develop with my supervisor. My IDP was not completed by December 10, I was not included in any discussions with my supervisor concerning my IDP.

It was my understanding that I would be protected from retaliatory actions when I filed the EEO complaint, but I wasn't. I am asking for your help and intervention with this situation. Also, I would appreciate if you can please tell me what my rights are and what options I might have at this time. I have followed the chain of command and the rules to the best of my ability. I did inform Maria Ramirez, acting area manager for Jim Cherry, of the situation and that I would be taking further action by contacting your office.

I realize this letter is already quite long, however, if something is unclear or you need more information that may be useful please feel free to contact me. I will be on medical leave for awhile and can be reached at home or my cell.

Thank you

Sincerely,

Cheryl J. Riley

Attachments:   Resolution Agreement
               Email to Tess Yiamarelos, EEO Counselor Lower Colorado Region


CC:    Judy Colvert (Fax 202-208-4657)
       Lorraine Bobian (Fax 303-445-6415)


Riley 0240

**ATTACHMENT "8"**

02/10/05

To: MARYANN CANTOR   210 - 688 · 2948

FROM: Cheryl Riley

What the Agency originally offered
— Shows they were willing to
   Permanently reassign me!

* the circled notations are my changes

* the final is what the LC Region EEO did.

o Also - My SF-50 showing detail w/ unclassified
   duties that I never knew of or had a chance
   to agree to before the SF-50 was done. It
   was not in the resolution agreement

• And my SF-50 reassigning me back to Rex Wahl
also
Some E-mails from me to Tess Yiamarelos EEO
   at LC Region.

Exhibit   2
Page   5  of 12

Proposal — agency agrees to:

(temp detail)

(60 days)

1. Reassign CP to the HAZMAT Team under Ron Curiel, Team Leader, effective October 11, 2004

2. ~~Provide clarification of~~ Discuss. CP's role and responsibilities on the HAZMAT Team, upon reassignment. (pertaining to detail)

3. Develop an individual, development plan for CP. within 80 days.

4. Develop CP's performance standards by 10/15/04 and ~~will~~ conduct evaluation by year-end.

5. Facilitate improved communication between CP and Thayer Brioli, Super by holding weekly meetings for a period of at least six months.

6. Provide up to six EAP sessions for CP.

Exhibit  2
Page  6  of  12

ent By: US BUREAU OF RECLAMATION;         928 343 8492;      Nov-22-04  2:33PM;      Page 2/3

Standard Form 52
Rev. 7/91
U. Office of Personnel Management
44 Supp. 296-33, Subch. 3

# REQUEST FOR PERSONNEL ACTION

| Part A - Requesting Office (Also Complete Part B, Items 1, 7-22, 32, 33, 36 and 39.) | | 1. Request Number |
|---|---|---|
| DETAIL OF AN EMPLOYEE | | 041450130 |
| For Additional Information Call (Name and Telephone Number) | | 4. Proposed Effective Date |
| MELISSA SPARLIN          (928) 343-8120 | | 10/10/04 |
| Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) | |
| | MELISSA A. SPARLIN  10/08/04 | |

## PART B - For Preparation of SF 50 (Use only codes in FPM Supplement 292-1). Show all dates in month-day-year order.

| | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| RILEY, CHERYL J. | | 555-40-B173 | 09/25/51 | 10/11/04 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| A. Code | 5-B. Nature Of Action | 6-A. Code | 6-B. Nature of Action |
| 919 | DETAIL NTE 12-09-04 | | |
| C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 15. FROM: Position Title and Number | 16. TO: Position Title and Number |
|---|---|
| NATURAL RESOURCE SPECIALIST | UNCLASSIFIED DUTIES |
| 3407210      0Y07860 | 3407220      0000000 |

| 7. Pay Plan | 8. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0401 | 09 | 01 | $ 40454 | PA | | | | | | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $ 36478 | $ 3976 | $ 40454 | $ 0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| LOWER COLORADO REGION | LOWER COLORADO REGION |
| YUMA AREA OFFICE | YUMA AREA OFFICE |
| RESOURCE MANAGEMENT OFFICE | RESOURCE MANAGEMENT OFFICE |
| ENVIRONMENTAL & HAZARDOUS MATERIALS G | ENVIRONMENTAL & HAZARDOUS MATERIALS G |
| ENVIRONMENTAL TEAM | HAZARDOUS MATERIALS TEAM |
| | YUMA, ARIZONA |

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 - None        3 - 10-Point/Disability   5 - 10-Point Other | | 0 - None      2 - Conditional | | | YES   [X] NO |
| 2 - 5-Point    4 - 10-Point Compensable   6 - 10-Point/Compensable/30% | | 1 - Permanent    3 - Indefinite | | | |
| 1 | | 1 | | | |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| BASIC ONLY | | NOT APPLICABLE | |
| C0 | | 9 | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS & FICA | 08/28/00 | F   FULL-TIME | 0 |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General     E - Exempt | | | 7777 |
| 2 - Excepted Service      4 - SES Career Reserved   N - Nonexempt | | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 04-0620-027 | YUMA, YUMA, ARIZONA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| 0B | | | | 1 - USA  8 - Other   [X] | | 8 |
| | | | 91 | | | |

## PART C - Reviews and Approvals (Not to be used by requesting office.)

| | 1. Office/Function | Initials/Signature | Date | | Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|---|---|
| A | SPECIALIST | KATHERINE L. FOREM | 10/15/04 | D. | | | |
| B | SPECIALIST | LOURDES H. VELASQU | 10/14/04 | E. | | | |
| C. | | | | F. | | | |

| 2. | I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements. | LOURDES H. VELASQUEZ | Approval Date |
|---|---|---|---|
| | | HUMAN RESOURCES SPECIALIST | 10/13/04 |

Exhibit  2
Page  7  of 12

ent By: US BUREAU OF RECLAMATION;          928 343 8492;          Nov-22-04  2:33PM;          Page 3/3

# UNCLASSIFIED DUTIES

1. Continue as primary POC for the Salvinia project.

2. Be assigned CECs as required in support of Compliance Team Operations.

3. FTHL field monitoring.

4. APAP permit compliance monitoring and reporting requirements support.

5. A22 site APP permit compliance and site monitoring support.

6. Septic APP Permit compliance and site monitoring support.

7. Hazardous Waste Management Program support and assistance, as required.

8. Introduced to the range of functions performed in the HazMat Team and be expected to lend support and assistance as required, when available.

9. Other duties as required.

Exhibit ___2___

Page __8__ of _12_

Riley 0204

02-16-2005 02:23        92832__19                                      PAGE5

Standard Form 52
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 3

## REQUEST FOR PERSONNEL ACTION

**PART A - Requesting Office** (Also complete Part B, Items 1, 7-22, 32, 33, 36 and 39.)

1. Actions Requested

TERMINATION OF A DETAIL

| 2. Request Number |
|---|
| 041655438 |

3. ... of Additional Information Call (Name and Telephone Number)

(000) 000-0000

4. Proposed Effective Date: 00/00/00

5. Action Requested By (Typed Name, Title, Signature, and Request Date)

6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date)

**PART B - For Preparation of SF 50** (Use only codes in FPM Supplement 292-1. Show all dates in month-day-year order.)

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| RILEY, CHERYL J. | 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 | 09/25/51 | 12/10/04 |

**FIRST ACTION** / **SECOND ACTION**

| 5-A. Code | 5-B. Nature Of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 921 | TERMINATION OF DETAIL | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| UNCLASSIFIED DUTIES | NATURAL RESOURCE SPECIALIST |
| 3407220  0000000 | 3407210  0Y07860 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | PA | GS | 0401 | 09 | 01 | $ 40454 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $ 36478 | $ 3976 | $ 40454 | $ 0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| LOWER COLORADO REGION YUMA AREA OFFICE RESOURCE MANAGEMENT OFFICE ENVIRONMENTAL & HAZARDOUS MATERIALS G HAZARDOUS MATERIALS TEAM | LOWER COLORADO REGION YUMA AREA OFFICE RESOURCE MANAGEMENT OFFICE ENVIRONMENTAL & HAZARDOUS MATERIALS G ENVIRONMENTAL TEAM YUMA, ARIZONA |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None  2 - 5-Point  3 - 10-Point/Disability  4 - 10-Point Compensable  5 - 10-Point Other  6 - 10-Point/Compensable/30%   = 1 | 0 - None  1 - Permanent  2 - Conditional  3 - Indefinite   = 1 | | YES [ ]  NO [X] |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0  BASIC ONLY | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS & FICA | 08/28/00 | F  FULL-TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved   = 1 | E - Exempt  N - Nonexempt   [N] | | 1316 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 04-0620-027 | YUMA, YUMA, ARIZONA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| 08 | | | 91 | 1 - USA  8 - Other  [X] | | 8 |

**PART C - Reviews and Approvals** (Not to be used by requesting office.)

| Office/Function | Initials/Signature | Date | Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A. SPECIALIST KATHERINE L. FOREM | 12/13/04 | | D. | | |
| B. SPECIALIST LOURDES H. VELASQU | 12/09/04 | | E. | **Riley 0205** | |
| C. SPECIALIST KATHERINE L. FOREM | 12/01/04 | | F. | | |

I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements.

| F. LOURDES H. VELASQUEZ HUMAN RESOURCES SPECIALIST | Approval Date 12/02/04 |
|---|---|

Exhibit  2
Page  9  of  12

ATTACHMENT "9"

02/14/05

TO: Mary ann Cantor          210-688-2948

FROM: Cheryl Riley          928-329-7219

Subject: EEO FORMS

Maryann

I've signed the attached forms.

I forgot to finish telling you that after Cindy Hoeft refused to reassign me to Ron Curiel for the final time. I spoke with Maria Ramirez, director of the administrative office including Human Resources, and told her of the situation and that Cindy had tried to have me sign the document to release them from any action by me but would allow them to change my job to 65-XXXX-XX-XX. I told Maria at that time that I considered what Cindy had done to be a retaliatory action against me and have filed a complaint accordingly.

At the time I spoke with Maria, I had initially gone to see Cindy's supervisor Jim Cherry, Yuma Area Office Manager. My intent was to go up the chain and Maria was acting for Jim Cherry that day as he was out of town.

Maria's phone number is 928-343-8109.

Sincerely,

Cheryl Riley

**Exhibit** ____
**Page** __1__ of __15__

**Riley 0182**

**ATTACHMENT "10"**

# Cheryl J. Riley  ◊ 928-329-7219 ◊ cell: 928-580-6222 ◊ work 928-343-8286

1562 W. 15th Street ◊ Yuma, Arizona 85364

February 18, 2005

Director, Office of Equal Opportunity                      **Certified USPS Return Receipt Mail**
Secretary of the Interior
1849 C Street, NW, MS-MIB-5221
Washington, D.C. 20240

RE:    Tess Yiamarelos, EEO Counselor Bureau of Reclamation Lower Colorado Region
       Janel Potucek, EEO Manager Bureau of Reclamation Lower Colorado Region

Dear Director:

I am filing a complaint against the above named individuals and bringing to your attention what I feel is an inappropriate action taken by the above named EEO counselor in assisting Resource Management Office Director Cynthia Hoeft to commit a retaliatory action against me.

Background: On or about July 20, 2004, I contacted Ms. Yiamarelos who provided me assistance with filing my EEO complaints. Ms. Yiamarelos was successful in convincing me to participate in ADR mediation and initially things seemed to be working out favorably. However, things changed after I notified her in early November that one of the individuals that I filed the EEO complaint against had retaliated against me. Ms. Yiamarelos became upset at what was done and somewhat angry and attempted to degrade the witness who had informed me of what Mr. Wahl had done but then told me to tell Ms. Hoeft what had occurred, which I did.

This complaint is in reference to the action taken against me that I described in my letter to your office dated December 31, 2004. I have paraphrased the following excerpt of that letter to facilitate the understanding of this complaint.

> *The retaliatory action by Ms. Hoeft occurred on December 7, 2004, when she called me into her office . . . . . handed me a new document titled Resolution Agreement saying if I wanted to be permanently assigned to Ron to sign this document. The document required that I irrevocably release Reclamation and all employees and parties from any criminal, EEO, and/or civil claims by me now and future for any and all actions taken against me. For this she would assign me permanently to Ron Curiel. By signing this document I would also agree that my position be changed from my current GS-0401-09-01 to "GS-XXXX-XX-XX." . . . . this resolution gave me no guarantee that Rex Wahl would stop victimizing and harassing me, and if I signed it would effectively give him the right to do whatever he wants to me and I would have forever signed away my right to object. . . . . If I signed I would get the reassignment away from Rex Wahl but it was very clear I would have to agree to give up my job. But if I didn't sign I would be returned to work under his direction - the very person who has been harassing me for months and causing serious problems for me in the workplace.*



COPY

Riley 0388

On December 23, 2004, I learned that Ms. Yiamarelos had been involved in constructing this resolution agreement that was presented to me by Ms. Hoeft. Ms. Yiamarelos left a voicemail message for me on my office phone in which she spoke favorably of this document and suggested that it would be good for me to sign.

On January 4, 2005, I learned from an EEO specialist in Denver that it is improper for an EEO counselor to assist in a retaliatory action, or anything remotely construed to be an act of reprisal. This was confirmed for me on January 19, when I spoke with a Federal employee union representative who stated that an EEO counselor is supposed to maintain a stance of impartiality otherwise they can be guilty of reprisal as well.

Ms. Yiamarelos assisted Ms. Hoeft to create a document to be used against me and perform an act of reprisal against me for my filing an EEO complaint, I feel that , in so doing,, she also took an action against me that would cause me harm. The actions by Ms. Yiamarelos were inappropriate and I am filing this complaint against both her and her manager, Ms. Potucek, accordingly.

So that you are aware, I also feel that a conflict of interest may exist within the Lower Colorado Region EEO office that precludes an employee receiving unbiased and impartial treatment when contacting that office with an EEO issue arising out of the Yuma Area Office. I have on occasions observed what was clearly a close socializing relationship and camaraderie between Janel Potucek and Cynthia Hoeft. I was also disturbed when at my first contacting Ms. Potucek July 17 2004, regarding filing an EEO complaint, which involved Ms. Hoeft she treated my complaint very lightly, and in effect gave me the impression she did not believe me or consider the problem I was having important enough to address. I thought then that she seemed somewhat biased in favor of Ms. Hoeft and not open to me.

Please take whatever actions are appropriate on my behalf. If you require more specifics, copies of emails, dates, etc., please let me know.

Sincerely,

Cheryl J. Riley

COPY

**Riley 0389**

# Cheryl J. Riley ◊ 928-329-7219 ◊ cell: 928-580-6222 ◊ work 928-343-8286

1562 W. 15th Street ◊ Yuma, Arizona 85364

February 18, 2005

Director, Office of Equal Opportunity          **Certified USPS Return Receipt Mail**
Secretary of the Interior
1849 C Street, NW, MS-MIB-5221
Washington, D.C. 20240

RE:    Tess Yiamarelos, EEO Counselor Bureau of Reclamation Lower Colorado Region
       Janel Potucek, EEO Manager Bureau of Reclamation Lower Colorado Region

Dear Director:

I am filing a complaint against the above named individuals and bringing to your attention what I feel is an inappropriate action taken by the above named EEO counselor in assisting Resource Management Office Director Cynthia Hoeft to commit a retaliatory action against me.

Background: On or about July 20, 2004, I contacted Ms. Yiamarelos who provided me assistance with filing my EEO complaints. Ms. Yiamarelos was successful in convincing me to participate in ADR mediation and initially things seemed to be working out favorably. However, things changed after I notified her in early November that one of the individuals that I filed the EEO complaint against had retaliated against me. Ms. Yiamarelos became upset at what was done and somewhat angry and attempted to degrade the witness who had informed me of what Mr. Wahl had done but then told me to tell Ms. Hoeft what had occurred, which I did.

This complaint is in reference to the action taken against me that I described in my letter to your office dated December 31, 2004. I have paraphrased the following excerpt of that letter to facilitate the understanding of this complaint.

*The retaliatory action by Ms. Hoeft occurred on December 7, 2004, when she called me into her office . . . . . handed me a new document titled Resolution Agreement saying if I wanted to be permanently assigned to Ron to sign this document. The document required that I irrevocably release Reclamation and all employees and parties from any criminal, EEO, and/or civil claims by me now and future for any and all actions taken against me. For this she would assign me permanently to Ron Curiel. By signing this document I would also agree that my position be changed from my current GS-0401-09-01 to "GS-XXXX-XX-XX." . . . . this resolution gave me no guarantee that Rex Wahl would stop victimizing and harassing me, and if I signed it would effectively give him the right to do whatever he wants to me and I would have forever signed away my right to object. . . . . If I signed I would get the reassignment away from Rex Wahl but it was very clear I would have to agree to give up my job. But if I didn't sign I would be returned to work under his direction ‒ the very person who has been harassing me for months and causing serious problems for me in the workplace.*

**Riley 0390**



On December 23, 2004, I learned that Ms. Yiamarelos had been involved in constructing this resolution agreement that was presented to me by Ms. Hoeft. Ms. Yiamarelos left a voicemail message for me on my office phone in which she spoke favorably of this document and suggested that it would be good for me to sign.

On January 4, 2005, I learned from an EEO specialist in Denver that it is improper for an EEO counselor to assist in a retaliatory action, or anything remotely construed to be an act of reprisal. This was confirmed for me on January 19, when I spoke with a Federal employee union representative who stated that an EEO counselor is supposed to maintain a stance of impartiality otherwise they can be guilty of reprisal as well.

Ms. Yiamarelos assisted Ms. Hoeft to create a document to be used against me and perform an act of reprisal against me for my filing an EEO complaint, I feel that , in so doing,, she also took an action against me that would cause me harm. The actions by Ms. Yiamarelos were inappropriate and I am filing this complaint against both her and her manager, Ms. Potucek, accordingly.

So that you are aware, I also feel that a conflict of interest may exist within the Lower Colorado Region EEO office that precludes an employee receiving unbiased and impartial treatment when contacting that office with an EEO issue arising out of the Yuma Area Office. I have on occasions observed what was clearly a close socializing relationship and camaraderie between Janel Potucek and Cynthia Hoeft. I was also disturbed when at my first contacting Ms. Potucek July 17 2004, regarding filing an EEO complaint, which involved Ms. Hoeft she treated my complaint very lightly, and in effect gave me the impression she did not believe me or consider the problem I was having important enough to address. I thought then that she seemed somewhat biased in favor of Ms. Hoeft and not open to me.

Please take whatever actions are appropriate on my behalf. If you require more specifics, copies of emails, dates, etc., please let me know.

Sincerely,


Cheryl J. Riley

Riley 0391

