**EXHIBIT "F"**

**Law Office of James Burr Shields**
382 East Palm Lane
Phoenix, Arizona 85004-1531
(602) 307-0780 (Office)
(602) 307-0784 (Facsimile)

James Burr Shields II, State Bar #011711
John A. Conley, State Bar #016429
W. Blake Simms, State Bar #021595
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Cheryl J. Riley, ) | Case No. CV06-2160-PHX-SRB |
| Plaintiff, ) | |
| ) | |
| vs. ) | **AFFIDAVIT OF** |
| ) | **JANET STORK** |
| Dirk Kempthorne, ) | |
| Secretary, United States ) | |
| Department of the Interior, ) | |
| ) | |
| Defendant. ) | |

STATE OF ARIZONA )
) ss.
County of MARICOPA )

I, Janet Stork, being first duly sworn, depose and state as follows:

1.     I am competent to testify as a witness at trial. I have firsthand knowledge of the information contained in this affidavit. If I were called to testify at trial, I would make substantially the same statements as those contained herein.

2.     I began my career with the Bureau of Reclamation in October 1991. I was hired as a Staff Engineer. I hold a Bachelor of Science Degree in Civil Engineering from the University of Colorado at Denver.

3.     During my employment with the Bureau of Reclamation, I was continuously employed in the Bureau's Yuma Area Office.

4.     I retired from the Bureau of Reclamation on September 30, 2004.

5.     During the end of my tenure with the Bureau of Reclamation, I worked with

Riley 2664

1 | Rex Wahl. Mr. Wahl was an Environmental Team Lead.

2 |      6.     I worked with Rex Wahl on several Colorado River projects. I was the Design

3 | Engineer for the projects. During the approximately nine months prior to my retirement, I

4 | had the opportunity to work with Mr. Wahl on a continuous basis and observe him in the

5 | work place. For a period of time, Mr. Wahl's Environmental Compliance Team, shared a

6 | room, in which my office was located.

7 |      7.     In my opinion, Rex Wahl was a sexist. He appeared to treat women as sexual

8 | objects. On several occasions, when passing women in the hallways or interacting with them

9 | during meetings, Mr. Wahl continually appeared to be on the make. He often leered at

10 | women and commented on their physical appearance.

11 |      8.     I recall Mr. Wahl making statements about the appearance of females in the

12 | office. His comments were continual and widespread. I recall Mr. Wahl telling female

13 | employees "that blouse shows your curves." I also recall him saying to a female employee,

14 | "that skirt is nice and short." To the best of my recollection, these comments were made to

15 | Yuma Area Office employees Melissa Sparlin and Andrea Campbell.

16 |      9.     I recall being in a meeting in April or May of 2004, with Mr. Wahl, when he

17 | described Melissa Sparlin as "hot" and "loose." These comments were made in front of me,

18 | Thayer Broili, Cindy Hoeft, Doug Lancaster, Carl Karr, Julian DeSantiago and, perhaps,

19 | others. Mr. Wahl's comments made me angry. I felt that his supervisors, who were present

20 | at the time and aware of his comments, should have disciplined him. To my knowledge, they

21 | did not discipline him.

22 |      10.     On another occasion, in approximately May 2004, I recall attending a meeting

23 | on the second floor, next to the elevator of the Yuma Area Office. Present at the meeting

24 | were Mr. Wahl, Doug Lancaster, Carl Karr, Julian DeSantiago, Thayer Broili and me. The

25 | topic of this meeting was the Needle Bankline Project. At the start of the meeting, we were

26 | waiting for a female member of Mr. Wahl's team to arrive. She was a few seconds late.

27 | While waiting, Mr. Wahl said that the reason the female employee was late "must be that its

28 | her time of the month." Shortly thereafter, Cheryl Riley entered the room and attended the

Riley 2665

1  meeting. At that time, I realized that Mr. Wahl's sexist comments were directed toward Ms.

2  Riley. She and I were the only two females at the meeting. She was the only female who

3  arrived after the meeting began.

4     11.    When Mr. Wahl made the comment about it being Ms. Riley's "time of the

5  month," the other male attendees chuckled. This included Mr. Wahl's supervisor, Thayer

6  Broili.

7     12.    I also observed during the time I worked with Mr .Wahl that he devalued the

8  work and accomplishments of female employees of the Yuma Area Office. Mr. Wahl often

9  commented on the inadequate, sloppy or late work provided by various female employees.

10  Those employees included Cheryl Riley and Andrea Campbell. Because I was the Project

11  Designer for several of the projects on which Ms. Riley and Ms. Campbell worked, I had the

12  opportunity to review their work product. In my opinion, their work product was not

13  inadequate, sloppy or late. In my opinion, Mr. Wahl undervalued the contributions of female

14  employees and was hyper-critical of their work. I do not recall Mr. Wahl making similar,

15  negative comments about the work of male employees at the Yuma Area Office.

16     13.    The sexual comments of Mr. Wahl, his leering at women and unsubstantiated

17  criticism of their work performance was, in my observation, consistent with the overall

18  atmosphere of gender inequality at the Yuma Area Office. Females were objectified in that

19  office and their work contributions undervalued. This atmosphere was allowed to persist by

20  the managers and supervisors of the Office.

21     FURTHER AFFIANT SAYETH NOT.

22

23  _Janet Stork_
    Janet Stork

24     SUBSCRIBED AND SWORN TO before me this 24 day of January, 2008 by Janet

25  Stork.

26  _Bernice Linda Villa_
    Notary Public

27

28


OFFICIAL SEAL
BERNICE LINDA VILLA
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires April 15, 2011

- 3 -

Riley 2666